IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | Chapter 11 |
| § | | |
| TEX-GAS HOLDINGS, LLC § | | CASE NO. 21-80092 |
| § | | |
| Debtor § | | |
| § | | |
| TEX-GAS HOLDINGS, LLC § | | |
| Plaintiff § | | |
| § | | |
| v. § | | ADVERSARY NO. 21-_____ |
| § | | |
| LUI SO YUK, SHAM WAI BUN, § | | |
| BRIAN MITCHELL, JAY L. § | | |
| KRYSTINIK, CLARK A. DONAT & § | | |
| FORTUNE INSIGHT LIMITED, § | | |
| Defendants. § | | |

## TEX-GAS HOLDINGS, LLC'S ORIGINAL COMPLAINT

Plaintiff, TEX-GAS HOLDINGS, LLC ("Tex-Gas"), files this *Complaint for (i) Declaratory Relief (ii) Breach of Contract; (iii) Avoidance of a Lien; and (iv) Fraud* (the "Complaint") against Defendants, LUI SO YUK, SHAM WAI BUN, BRIAN MITCHELL, JAY L. KRYSTINIK, CLARK A. DONAT and FORTUNE INSIGHT LIMITED, and respectfully submits as follows:

### I.   NATURE OF THE ACTION

1.   Tex-Gas brings this Complaint to obtain a declaratory judgment to resolve a dispute between the parties regarding (i) Defendants' failure to abide by their financing obligations under the Promissory Note, Loan Agreement, and Deed of Trust and (ii) Defendants' efforts to wrongfully foreclose on the Deed of Trust.

2.   Defendants, through the Substitute Trustees, attempted to wrongfully foreclose on Tex-Gas' property, despite the Promissory Note not being funded and the Substitute Trustees'

1

multiple failures to properly notify all borrowers entitled to notice, and surreptitiously altering notarized documents.

3. As a result, pursuant to FEDERAL RULE OF BANKRUPTCY PROCEDURE 7001(2) & (9), Tex-Gas seeks an order declaring that (i) the Deed of Trust be expunged and released; (ii) that Defendants failed to properly notice the attempted foreclosure sale, in violation of the TEXAS PROPERTY CODE and the Loan Documents; and (iii) that Defendants have breached their contractual obligations and fraudulently attempt to collect a debt against the Plaintiff and foreclose upon the Plaintiff's property.

## II.     PARTIES

4. Plaintiff, Tex-Gas, Debtor in the above styled bankruptcy case, is a Delaware limited liability company with its principal assets located in Matagorda County, Texas.

5. Defendants are identified and the information necessary to effect service upon each of them is as follows:

    a. Defendant Lui So Yuk ("Yuk") is a foreign individual residing at House 3, Marinella, 9 Welfare Road, Island South, Hong Kong. Yuk may be served with summons and complaint by serving the substitute trustee, Brian C. Mitchell, 2850 N. Harwood Street, Suite 1500, Dallas, Texas 75201.

    b. Defendant Sham Wai Bun ("Bun") is a foreign individual residing at A2, 339 Tai Hang Road, Happy Valley, Hong Kong. Bun may be served with summons and complaint by serving the substitute trustee, Brian C. Mitchell, 2850 N. Harwood Street, Suite 1500, Dallas, Texas 75201.

    c. Defendant Brian Mitchell, serving as a substitute trustee, is an individual residing in the State of Texas and may be served with the summons and the

complaint at his principal place of business located at 2850 N. Harwood Street, Suite 1500, Dallas, Texas 75201.

d. Defendant Jay L. Krystinik, serving as a substitute trustee, is an individual residing in the State of Texas and may be served with the summons and the complaint by serving him at his principal place of business located at 2850 N. Harwood Street, Suite 1500, Dallas, Texas 75201.

e. Defendant Clark A. Donat, serving as a substitute trustee, is an individual residing in the State of Texas and may be served with the summons and the complaint by serving him at his principal place of business located at 2850 N. Harwood Street, Suite 1500, Dallas, Texas 75201.

f. Defendant Fortune Insight Limited is a limited corporation organized and existing in the British Virgin Islands and may be served with the summons and the complaint at its registered office: Sea Meadow House, Blackburne Highway, P.O. Box 116, Road Town, Tortola, British Virgin Islands and/or at its principal place of business: 19th Floor CMA Building, 64 Connaught Road, Central Hong Kong office.

### III.    JURISDICTION AND VENUE

6. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (K) and (O). To the extent this Court determines that any of the matters described herein are not core, but "related to" proceedings, Plaintiff agrees to the entry of final orders by the Bankruptcy Court.

7. Additionally, this adversary proceeding is brought under FEDERAL RULE OF BANKRUPTCY PROCEDURE 7001(2) & (9) to determine the validity, priority, or extent of a lien or other interest in property, and to obtain a declaratory judgment related to the foregoing.

8. Venue is proper in the Court pursuant to 28 U.S.C. §1409(a). Further, the applicable written agreements between the parties provide that they consent to jurisdiction of any applicable court sitting in Matagorda County, Texas.

## IV.  FACTUAL BACKGROUND

9. Tex-Gas owns approximately 17 acres of real property and certain improvements located in Bay City, Matagorda County, Texas (the "Property"). A non-debtor affiliate of Tex-Gas owns and operates a devulcanization plant on the Property (the "Plant").

10. On June 1, 2021 (the "Petition Date"), faced with the eminent and wrongful foreclosure of the Property, Tex-Gas filed a voluntary petition under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §101 *et sq*. (the "Bankruptcy Code").

**A. The Proposed Financing Transaction.**

11. Tex-Gas, a U.S. based affiliate of Gate Corporation Limited ("Gate Corporation"), along with certain other non-debtor affiliates sought financing from domestic and international investors for purposes of providing a working capital revolving line of credit for their ongoing operations.

12. In early July 2020, Gate Corporation engaged in negotiations with Paul Heffner regarding a potential financing transaction for a revolving loan. Heffner was a well-respected business man and investment banker residing in Hong Kong. Heffner was the CEO and COO of multiple ventures, including hedge funds, private equity funds, and direct investments. Heffner purportedly managed hundreds of millions in assets and was related to some of Hong Kong's most

prominent business tycoons. Among other things, Heffner represented that he was President of Fortune Insight Limited ("Fortune Insight").  Fortune Insight is organized and existing under the laws of the British Virgin Islands.

13. Heffner represented that funding for a $30,000,000 revolving line of credit would become available on July 31, 2020, from Fortune Insight.  Based upon the representations by Heffner and Fortune Insight that funding under a loan agreement would commence on July 31, 2020, Gate Corporation, Tex-Gas, EFG America, LLC, EF Global Corporation (together, the "Borrowers") entered into the Promissory Note for Revolving Line of Credit Facility (the "Promissory Note") and Loan Agreement with Fortune Insight as the lender dated July 21, 2020.[1]

14. The Promissory Note and Loan Agreement was to be secured by a Security Agreement and Deed of Trust (the "Deed of Trust") on the Property, among other things.  The Promissory Note, Loan Agreement, the Security Agreement, and Deed of Trust are collectively referred to herein as the "Loan Documents."

15. Based upon the assurances of Fortune Insight, the Loan Documents were signed by the Borrowers and Deed of Trust was filed and recorded with the Real Property Records of Matagorda County, Texas.[2]

16. According to the Deed of Trust, Defendants Yuk and Bun were part of a loan syndicate and were responsible to fund $30,000,000 (USD) to Fortune Insight, which would in turn be available to fund the loan to Borrowers.

---

[1] A true and correct copy of the Promissory Note is attached hereto as **Exhibit A** and a true and correct copy of the Loan Agreement is attached hereto as **Exhibit B** and are incorporated herein by reference.
[2] A true and correct copy of the Deed of Trust is attached hereto as **Exhibit C** and is incorporated herein by reference.

17. Under the Loan Agreement, Fortune Insight, as the lender, assigned all of its rights, benefits, and interests in the Security Agreement and Deed of Trust, including the right to exercise all rights in interests in the event of default, to Defendants Yuk and Bun as assignees.[3]

18. Summarized, the financing process was supposed to consist of (1) Yuk would fund $18,000,000 (USD) to Fortune Insight and Bun would fund $12,000,000 (USD) to Fortune Insight and (2) Fortune Insight was to loan $30,000,000.00 to the Borrowers on a revolving basis. The initial draw under the Loan Agreement of approximately $14 million (USD) was expected to fund on July 31, 2020.

19. Notably, during the course of the transaction outlined above, Heffner and Fortune Insight acted as the authorized representatives for Defendants Yuk and Bun. The Borrowers had no contact with Yuk or Bun.

**B. Borrowers Never Received the Promised Funds.**

20. Despite assurances, the loan never funded to the Borrowers. When Fortune Insight failed to advance the initial $14,000,000 draw on the Loan Agreement on July 31, 2020, Heffner represented that litigation arose related to the deployment of the funds that were committed to the Borrowers, but assured the Borrowers that funding would occur. To date, the Borrowers have not received any of the funds promised under the Promissory Note and Loan Agreement.

21. To make matters worse, Heffner, the central figure of the transaction, was found dead under suspicious circumstances in Hong Kong in January 2021. According to press reports, Heffner had "financial problems." On February 22, 2021, just weeks after Heffner's death, Yuk and Bun, by and through their counsel, began demanding that Gate Corporation and Tex-Gas (and

---

[3] *Id.*

the other Borrowers) pay them $30,000,000, or they (Yuk and Bun) would foreclose under the Deed of Trust.[4]

22. The Borrowers continuously responded to Yuk and Bun that the Promissory Note was never funded and therefore there is nothing to repay. Despite request and demand, Defendants provided no evidence that Fortune Insight ever advanced any funds to the Borrowers or that Yuk and Bun ever advanced anything to Fortune Insight. The only "proof of funding" provided reflects that Defendants Yuk and Bun funded $4,846,000 (USD) to Net Effect (which was not involved in the transaction) in May 2019, minus $150,000 (USD) that went back from Heffner's personal account to Defendant Bun. Notably, May 2019 was more than a year before Borrowers entered into the Loan Documents.

23. Neither Bun nor Yuk have provided any evidence that they funded that amount to Fortune Insight, let alone the Borrowers.

24. It is unknown where any of the funds that were supposed to be loaned to the Borrowers have gone, or if they ever existed. Regardless, the Borrowers did not receive any funds under the Loan Agreement, and Yuk and Bun are seeking a windfall in their efforts to foreclose on the Property.

**C. Despite Tex-Gas Never Receiving Funds, Defendants Are Now Attempting to Foreclose on the Property.**

25. Now, rather than pursue their remedies against Heffner's estate, Fortune Insight (or Net Effect) to recoup the supposed missing funds, Defendants declared default on the unfunded Promissory Note and are attempting to wrongfully foreclose on the Property.

---

[4] Upon information and belief, Yuk and Bun refuse to look to the estate of Mr. Heffner for payment due to certain social and political influences in Hong Kong, and either Yuk or Bun is Mr. Heffner's common law brother-in-law.

26. Defendants retained Brian C. Mitchell, Jay L Krystinik, and Clark A. Donat of Reed Smith, LLP to serve as Substitute Trustees (collectively, the "Substitute Trustees"), and instructed them to sell the Property at a non-judicial foreclosure sale. The Substitute Trustees continue to pursue and engage in a pattern of wrongful and bad faith actions.

27. On May 7, 2021, the Substitute Trustees sent out the Notice for Foreclosure (the "Notice").[5] The Notice alleged that the Borrowers defaulted on the terms of the Loan by failing "to pay certain install payments under the Loan when due, which failure continued beyond any and all applicable notice and cure periods."[6] This allegation is false and is an attempt to "shake down" the Borrowers.

### D. The Notice of Foreclosure Sale Contained Fatal Defects, Violating Texas Law and the Terms of the Deed of Trust.

28. The Notice sent by the Substitute Trustees was riddled with errors that violate Texas law and the terms of the Deed of Trust and reflects a continuation of the Defendants' bad faith and fraudulent conduct.

#### i. The Note was never funded, therefore there can be no default.

29. The Notice claims that an event of default occurred. However, the Borrowers never received the promised funding. Simply put, there were no funds for Borrower to default on repaying.

30. The Deed of Trust, in pertinent part, provides:

---

[5] A true and correct copy of the Substitute Trustees' Notice of Foreclosure Sale is attached hereto as **Exhibit D** and incorporated herein by reference.
[6] *Id.*, p. 2.

> **4. DEFAULT**
>
> **4.1 Events of Default.** As used in this Deed of Trust, the term "Default" means the occurrence of any of the following events:
>
> **4.1.1** The failure of Grantor or its affiliate to pay the debt secured by this Deed of Trust or any part of it, as it becomes due according to the terms of the Loan Agreement and applicable Note(s) (taking into account applicable grace and late payment periods);

31. It is axiomatic that there can be no default under the Deed of Trust if the underlying debt does not exist. Contrary to such basic principles, Defendants and their counsel assert that because Yuk and Bun purportedly loaned "some" funds to Net Effect Limited in 2019 (who is not a Borrower), it would somehow justify a default under the Deed of Trust and a foreclosure of the Property. There is no legal or equitable basis for such assertions. Instead, Defendants have taken the position that they will benefit by forcing the Plaintiff to file Chapter 11 bankruptcy to avoid the wrongful foreclosure. Such actions by the Defendants are in bad faith, wrongful, and a continuation of the Defendants' fraudulent actions, and have caused the Plaintiff substantial economic damages.

32. On May 27th and 28th 2021, Tex-Gas' counsel notified the Substitute Trustees of the clear defects of the Notices, their violations and breach of the Deed of Trust, the violations of the TEXAS PROPERTY CODE, and the glaring defects in the Defendants' attempt to foreclose. Additionally, on multiple occasions, Tex-Gas (and other Borrowers) notified the Substitute Trustees and Yuk and Bun that the Loan Agreement was never funded, and that their actions were wrongful.

33. However, the Substitute Trustees refused to halt the foreclosure sale, or to comply with Texas law and the Deed of Trust, forcing Tex-Gas to retain counsel, file the Chapter 11 bankruptcy case, and initiate this adversary proceeding.

### ii. The Notice contained a defective date.

34. The Notice of Trustee's Sale listed the foreclosure "Date of Sale" as June 1, 20**20**. On May 7, 2021, Defendants sent, by US First Class Mail, a Notice of Foreclosure Sale executed by Brian Mitchell and notarized by Shikendra Rhea to the Plaintiff and Gate Corporation Limited (the "Notice").[7] Mr. Mitchell is a partner at the law firm of Reed Smith LLP. Ms. Rhea is a paralegal at Reed Smith.

35. The Notice, in pertinent part, states:

**FORECLOSURE SALE:**

| | |
|---|---|
| Date of Sale: | Tuesday, June 1, 2020 |
| Time of Sale: | The sale of the Property will take place between the hours of 10:00 a.m. and 4:00 p.m. local time; the earliest time at which the sale will take place is 10:00 a.m., and the sale will begin within three hours thereafter. |

36. As a matter of law, and common sense, the Notice is defective because the Date of Sale is temporally impossible. Under the Deed of Trust, proper notice was impossible for the proposed Date of Sale because (1) the Notice was not advertised for twenty-one (21) days prior to the day of sale (of June 1, 2020);[8] (2) the Notice was not filed at least twenty-one (21) days prior to the proposed sale date;[9] and (3) written notice was not provided to all Borrowers by certified mail.[10]

37. Inexplicably, instead of correcting and properly sending an amended notice, the Substitute Trustee, surreptitiously and in a misguided attempt to alter the date after the defect was

---

[7] Ex. D, p. 7 (emphasis added).
[8] Ex. C, ¶ 4.3.1.
[9] *Id.*, ¶ 4.3.2.
[10] *Id.*

10

discovered, altered the (already) notarized Notice, scratched out the sale date and date of the Deed of Trust, and filed the altered notice in the Matagorda County Real Property Records (the "<u>Altered Notice</u>"). The Altered Notice was not transmitted to the Borrowers as required by TEXAS PROPERTY CODE and the Deed of Trust.[11]

38.  In an attempt to "hide the ball" and move forward with the foreclosure sale, the Substitute Trustees intentionally failed to properly notify the Borrowers. Specifically, the Substitute Trustees: (1) did not indicate on the Altered Notice that it amended the Notice; (2) did not send the Altered Notice to the borrowers by certified mail, as required by the Deed of Trust and TEXAS PROPERTY CODE; and (3) importantly, it appears that the Substitute Trustees simply cut-and-pasted the notarization from the Notice to the Altered Notice or altered a document after it had been notarized.

39.  By altering a legal document after it was notarized, the Substitute Trustees' actions evolved from simply trying to cover up a mistake to making fraudulent representations about the validity of the document and the foreclosure process. Such actions are a continuation of the Defendants' fraudulent and bad faith acts in attempting to collect on a loan that was never funded and foreclose under a deed of trust that is not valid.

### iii. The Substitute Trustees did not notify all borrowers.

40.  Lastly, the Notice was not sent to each borrower obligated to pay the Deed of Trust. The Deed of Trust requires:

> "Send written notice of the time, place, and terms of the sale of the Property by **certified mail** to **each person obligated to pay the debt** secured by this Deed of Trust according to the records of Beneficiary at least twenty-one (21) days preceding the date of the sale at the most recent address as shown by the records of the Beneficiary."

---

[11] A copy of the Altered Notice is attached hereto as **Exhibit E** and incorporated herein by reference.

Ex. C, ¶ 4.3.3 (emphasis added).

41. Under the Loan Agreement, there were four (4) borrowers obligated to pay the debt: Gate Corporation; EF Global Corporation; EFG America, LLC; and Tex-Gas.[12]

42. However, the Notice clearly shows that it was not sent to EF Global Corporation or EFG America, LLC, as required by the Deed of Trust and the TEXAS PROPERTY CODE.[13]

43. Despite demands, Defendants have refused to produce any evidence that the Notice was served upon all the Borrowers as required by the applicable statute and Deed of Trust.

44. The Substitute Trustees' actions not only violate the terms of the Deed of Trust, but they also violate TEXAS PROPERTY CODE, which requires that the notice of sale be served by "**certified mail on each debtor**" who "is obligated to pay the debt." TEX. PROP. CODE Section 51.002(b)(3) (emphasis added).

45. There is no evidence that the Notice was ever sent, let alone properly sent, to EF Global Corporation or EFG America, LLC. Taken together, all the facts reflect that the Defendants are acting in bad faith, are fraudulently misrepresenting their rights under the Deed of Trust and Notice, all of which has caused the Plaintiff substantial damages. Defendants' actions constitute a pattern of bad faith and wrongful conduct.

**COUNT ONE:**
**DETERMINATION OF THE EXTENT, VALIDITY, AND PRIORITY OF DEFENDANTS' ALLEGED LIEN, CLAIM, OR INTERESTS**

46. Tex-Gas repeats and incorporates the allegations contained in paragraphs 1-45 as if fully set forth herein.

---

[12] Ex. B, p. 6.
[13] Ex. D, p. 1.

47. FED. R. BANKR. P. 7001(9) provides that an adversary proceeding is required to obtain a declaratory judgment relating to the validity, priority, or extent of a lien or other interest in property.

48. There is an actual and justifiable controversy regarding whether the Promissory Note, which was secured by the Deed of Trust, was funded. In a case of actual controversy within its jurisdiction, any court of the United States, may declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C. § 2201(a). Any such declaration shall have the force and effect of a final judgment or decree. *Id.*

49. Tex-Gas is entitled to, and requests, a declaratory judgment that under applicable Texas law, and the terms of the agreement between the Parties, Defendants' Deed of Trust is invalid and must be declared expunged and released because the Promissory Note was never funded.

50. Additionally, Tex-Gas requests a declaratory judgment that under applicable Texas law, and the agreement between the Parties, notice for the foreclosure sale to occur on June 1, 20<u>20</u> was improper and an abuse of process. The strict requirements of TEXAS PROPERTY CODE Section 51.002 require that for a sale of real property under a power of sale conferred by a deed of trust to be proper, the notice must (i) be provided to each debtor; (ii) served by certified mail; (iii) be advertised twenty-one (21) days prior to the day of sale; and (iv) be filed at least twenty-one (21) days prior to the proposed sale date. Defendants failed to comply with any of the applicable requirements.

## COUNT TWO:
## BREACH OF CONTRACT & AND BREACH OF DUTY
## OF GOOD FAITH AND HONESTY IN FACT

51. Tex-Gas repeats and incorporates the allegations contained in paragraphs 1-50 as if fully set forth herein.

52. Tex-Gas and Defendants executed a valid and enforceable written contract (i.e., the Loan Documents).

53. Tex-Gas performed its obligations under the Loan Documents as a Borrower. However, Defendants failed to perform their contractual obligations.

54. First, Defendants have breached the Loan Documents by failing to fund the loan.

55. Second, despite their breach, the Defendants have wrongfully declared the Borrowers (including the Plaintiff) in default and wrongfully seek to foreclose on the Property.

56. Defendants' nonperformance and subsequent wrongful actions constitute a breach of the parties' contract.

57. As a result of the Defendants' wrongful actions, Plaintiff has suffered damages.

58. Texas recognizes that there is a duty of good faith and fair dealing when dealing with a contractual relationship. As described in detail above, the Defendants breached the duty of good faith and fair dealing, the Defendants have pursued a path of wrongful conduct in an attempt to collect a debt that is not owed. Accordingly, the Plaintiff is entitled to an award of punitive damages against the Defendants.

59. All conditions precedent to Tex-Gas' claim for relief have been performed or have occurred.

## COUNT THREE:
## AVOIDANCE OF LIEN

60. Tex-Gas repeats and incorporates the allegations contained in paragraphs 1-59 as if fully set forth herein.

61. FED. R. BANKR. P. 7001(2) provides that an adversary proceeding is required to "determine the validity, priority, or extent of a lien or other interest in property."

62. Defendants do not have a properly perfected lien on the Property in compliance with applicable law or the Loan Documents because the loan was never funded.

63. Specifically, by failing to provide the secure payment of a $30 million revolving line of credit pursuant to the July 21, 2020 Loan Documents, Defendants failed to abide by the Deed of Trust.

> 2. **DEBT**
>
> 2.1 **Secured Debt**. This conveyance is made in trust to secure payment of a $30 million revolving line of credit promissory note (the "Note") made by Grantor and its affiliates including, Gate Corporation Limited, and payable to the order of Fortune Insight Limited, pursuant to a Loan Agreement between such parties dated July 21, 2020. Grantor is a co-maker under the Loan Agreement and such Note.

64. Accordingly, because there was no underlying debt due to Defendants' prior material breach, there can be no Event of Default.

65. Defendants are now seeking to fraudulently foreclose on the Property when there has been no Event of Default.

66. As a result, Defendants' lien and secured interest on the Property is invalid and unenforceable.

67. Plaintiff is entitled to a judgment avoiding the Defendants' alleged lien and on, or security interest in, the Property.

## COUNT FOUR:
## FRAUD

68.     Tex-Gas repeats and incorporates the allegations contained in paragraphs 1-67 as if fully set forth herein.

69.     Tex-Gas and Defendants were parties to the underlying transaction involving the Loan Documents and prospective $30,000,000.00 revolving loan.

70.     Prior to entering into the transaction, Defendants made multiple false representations of material fact to Tex-Gas, including:

   a. That the loan would be "imminently" available on July 31, 2020;

   b. That the Borrowers, including Tex-Gas, would receive access to the revolving loan; and

   c. That Yuk and Bun would fund the loan.

71.     Defendants made these representations and promises for the purpose of inducing Plaintiff to enter into the Loan Documents.

72.     Plaintiff justifiably relied on Defendants' representations and promises in entering into the Loan Documents.

73.     However, to this day, Plaintiff (and the Borrowers) have yet to receive a single dollar of the loan promised and agreed to by Defendants. Defendants' false representations have caused injury to Plaintiff.

74.     Additionally, Defendants are now engaged in a fraudulent attempt to foreclose on the Property. Defendants: (1) know, or should know, that Defendants have no valid lien or interest in the Property; (2) have knowingly altered the already notarized Notice of Substitute Trustee's Sale prior to filing it with the Matagorda County Real Property Records in an attempt to correct fatal notice defects without notifying all Borrowers; and (3) are engaging in a fraudulent course of

16

conduct to gain a windfall from the foreclosure of the Property without lending the funds pursuant to the Loan Documents.

75. Defendants' fraudulent conduct has caused significant injury to Plaintiff.

## V.     ATTORNEYS' FEES AND COSTS

76. Tex-Gas is entitled to recover reasonable and necessary attorneys' fees and costs under TEXAS CIVIL PRACTICE & REMEDIES CODE 38.001 because this suit is for breach of a written contract.

77. Additionally, Tex-Gas is entitled to recover reasonable and necessary attorneys' fees under 28 U.S.C. § 2202 because such an award is authorized by Texas law for a comparable action under the Texas Declaratory Judgment Act – which provides that a Court may award reasonable and necessary attorneys' fees when the parties seek to determine rights with respect to written contracts, deeds, and other writings. TEX. CIV. PRAC. & REM. CODE §§ 37.004, 37.009.

## PRAYER

WHEREFORE, Tex-Gas Holdings, LLC respectfully requests that this Court enter judgment in its favor and award the following relief:

A. An order declaring that the Deed of Trust is extinguished;
B. An order declaring that the Property is not subject to any liens or interests of the Defendants;
C. An order disallowing any claims of the Defendants against the Plaintiff and its estate;
D. That the Defendants breached the Loan Documents;
E. That the Defendants' actions were fraudulent as to the Plaintiff;
F. A judgment against the Defendants for actual and exemplary damages as allowed by law;
G. That Plaintiff is entitled to an award of its reasonable and necessary attorneys' fees against the Defendants incurred in filing and prosecuting this lawsuit; and
H. All such other relief that this Court deems just and equitable.

Dated: June 1, 2021

Respectfully submitted,

ANDREWS MYERS P.C.

*/s/ T. Josh Judd*
T. Josh Judd
SBN: 24036866
Patrick A. Kelly
SBN: 24105273
1885 Saint James Place, 15th Floor
Houston, TX 77056
Tel: 713-850-4200
Fax: 713-850-4211
jjudd@andrewsmyers.com
pkelly@andrewsmyers.com

**COUNSEL FOR TEX-GAS HOLDINGS, LLC**