**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 21-80092 (JPN) |
| TEX-GAS HOLDINGS, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**FIRST AMENDED DISCLOSURE STATEMENT UNDER
11 U.S.C. § 1125 AND BANKRUPTCY RULE 3016 IN SUPPORT
OF DEBTOR'S PLAN OF REORGANIZATION OF TEX-GAS HOLDINGS, LLC**

**THIS DISCLOSURE STATEMENT IS SUBMITTED TO ALL CREDITORS OF THE DEBTORS ENTITLED TO VOTE ON THE PLAN OF REORGANIZATION HEREIN DESCRIBED AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT THE DEBTOR' PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. THIS DISCLOSURE STATEMENT IS INTENDED TO PROVIDE ADEQUATE INFORMATION AS REQUIRED BY THE BANKRUPTCY CODE AS TO THE DEBTOR'S PLAN OF REORGANIZATION. ALL CREDITORS ARE URGED TO READ THE DISCLOSURE STATEMENT AND ATTACHMENTS WITH CARE AND IN THEIR ENTIRETY.**

**ON OCTOBER 6, 2021, THE BANKRUPTCY COURT CONDITIONALLY APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE. SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN OF REORGANIZATION HEREIN DESCRIBED AND ATTACHED AS EXHIBIT A, IS BEING SOUGHT FROM CREDITORS WHOSE CLAIMS AGAINST THE DEBTOR ARE IMPAIRED UNDER THE PLAN OF REORGANIZATION. CREDITORS ENTITLED TO VOTE ON THE PLAN OF REORGANIZATION ARE URGED TO VOTE IN FAVOR OF THE PLAN AND TO RETURN THE BALLOT INCLUDED WITH THIS DISCLOSURE STATEMENT UPON COMPLETION IN THE ENVELOPE ADDRESSED TO ANDREWS MYERS, P.C., ATTENTION: T. JOSH JUDD, 1885 SAINT JAMES PLACE, 15TH FLOOR, HOUSTON, TEXAS 77056, NOT LATER THAN FEBRUARY 28, 2020**

## TABLE OF CONTENTS

DISCLOSURE STATEMENT ...................................................................................... 1

I.    INTRODUCTORY STATEMENT ................................................................ 1

II.   VOTING PROCEDURES .............................................................................. 3

III.  IMPAIRMENT OF CLAIMS ........................................................................ 4

IV.   NATURE AND HISTORY OF BUSINESS ................................................. 5

   A.   SOURCE OF INFORMATION AND ACCOUNTING METHOD ................................. 5
   B.   GENERAL INFORMATION ABOUT THE DEBTOR ............................................... 6
      1.   The Debtor ............................................................................................. 6
         a.   Business Operation Model/Assets ................................................ 6
         b.   Liabilities ...................................................................................... 7
      2.   Threatened Wrongful Foreclosure. ...................................................... 9
      3.   Financial Situation as of Petition Date .............................................. 9
      4.   Ownership and Management ................................................................ 9
         a.   General Overview & Management ............................................... 9
         b.   Capital Structure .......................................................................... 9
      5.   Significant Actions in Bankruptcy Case ............................................ 10
         a.   Voluntary Petition filing. ........................................................... 10
         b.   Administration – "First Day" Motions ..................................... 10
         c.   Employment of Professional Persons ........................................ 10
   C.   CASE MANAGEMENT GOING FORWARD ......................................................... 10
      1.   Plan ...................................................................................................... 10
      2.   Assumption and Rejection ................................................................... 11

V.    DESCRIPTION OF PLAN ........................................................................... 11

   A.   OVERALL STRUCTURE OF THE PLAN .............................................................. 11
   B.   ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS AND TIMING OF PAYMENT ....... 12
   C.   CLASSES OF PRIORITY, SECURED AND UNSECURED CLAIMS AND TREATMENT OF INTERESTS 13
   D.   MEANS OF EXECUTION OF PLAN: .................................................................. 14
      1.   Vesting of Property of the Estate in Reorganized Debtor ................. 15
      2.   Continuation of Business Operations .................................................. 15
      3.   Directors and Officers of Reorganized Debtors ................................ 15
      4.   Source of Funds for Payments due on the Effective Date ................. 15
   E.   BAR DATES. ..................................................................................................... 15
      1.   Administrative Claims Bar Date ......................................................... 15
      2.   Unsecured Claims Bar Date ................................................................ 15
      3.   Rejection Damage Claim Bar Date ..................................................... 16
   F.   SUMMARY OF FINANCIAL PROJECTIONS ........................................................ 16

VI.   LIQUIDATION ANALYSIS ......................................................................... 16

  A.   METHODOLOGY. ........................................................................................ 17
  B.   ANALYSIS. ............................................................................................... 17

VII.   **RISKS POSED TO CREDITORS** ................................................... **17**

VIII.   **ALTERNATIVES** ................................................................................... **17**

  A.   CONVERSION TO CHAPTER 7 ................................................................ 18
  B.   DISMISSAL .............................................................................................. 18
  C.   NO ASSURANCE OF EITHER .................................................................. 18

IX.   **CERTAIN FEDERAL INCOME TAX CONSEQUENCES** ........................... **18**

  A.   TAX CONSEQUENCES TO CREDITORS ................................................. 18
     1.  *Generally* ........................................................................................ *18*
     2.  *Unsecured Claims* ........................................................................... *18*
  B.   TAX CONSEQUENCES TO THE DEBTOR. ............................................ 19

X.   **PREFERENCES AND FRAUDULENT TRANSFERS** ........................ **19**

XI.   **LITIGATION** .......................................................................................... **20**

XII.   **MANAGEMENT OF THE REORGANIZED DEBTOR** ......................... **21**

  A.   OFFICERS OF THE DEBTOR .................................................................. 21
  B.   MANAGEMENT COMPENSATION ........................................................... 21

XIII.   **ACCEPTANCE AND CONFIRMATION OF THE PLAN** ......................... **21**

  A.   ACCEPTANCE OF THE PLAN ................................................................. 21
  B.   CONFIRMATION WITHOUT ACCEPTANCE OF ALL IMPAIRED CLASSES ................................. 22
  C.   OTHER REQUIREMENTS FOR CONFIRMATION ..................................... 22
     1.  *Best Interest of Creditors* ............................................................. *22*
     2.  *Financial Feasibility* ..................................................................... *23*
  D.   CRAM-DOWN - CONFIRMATION WITHOUT ACCEPTANCE BY ALL IMPAIRED    CLASSES ... 23

XIV.   CONCLUSION ...................................................................................... **24**

## DISCLOSURE STATEMENT

Tex-Gas Holdings, LLC ("Debtor" or "Tex-Gas"), debtor and debtor-in-possession herein, submits this First Amended Disclosure Statement ("Disclosure Statement") under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016 in Support of its Chapter 11 Plan of Reorganization to all of its known Creditors.

## I.    INTRODUCTORY STATEMENT

Debtor submits this Disclosure Statement under 11 U.S.C. § 1125 in support of its Chapter 11 Plan of Reorganization under Chapter 11 of the United States Bankruptcy in connection with its solicitation of acceptances of the Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code filed by the Debtor (the "Plan"). A copy of the Plan is attached as Exhibit A for your review. All terms used in this Disclosure Statement but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

The Debtor filed a petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Galveston Division, on June 1, 2021 and retained T. Josh Judd and Andrews Myers, P.C., as bankruptcy counsel. The Debtor has prepared this Disclosure Statement to disclose that information which, in its opinion, is material, important, and necessary to an evaluation of the Plan. Pursuant to the terms of the United States Bankruptcy Code, this Disclosure Statement must be presented to and approved by the Bankruptcy Court. Such approval is required by statute and does not constitute a judgment by the Court as to the desirability of the Plan or as to the value or suitability of any consideration offered thereby.

The material herein contained is intended solely for the use of known creditors and interest holders of the Debtor, and may not be relied upon for any purpose other than a determination by them of how to vote on the Plan. As to Contested Matters, Adversary Proceedings and other actions or threatened actions, the Disclosure Statement and exhibits shall not constitute or be construed as an admission of any fact or liability, stipulation or waiver, but rather as a statement made in settlement negotiations under Rule 408 of the Federal Rules of Evidence. This Disclosure Statement shall not be admissible in any non-bankruptcy proceeding nor shall it be construed as to be advice on the tax, securities or other legal effects of the plan as to the holders of claims against or equity interests in the Debtor or its affiliates.

To ensure compliance with Treasury department circular 230, each holder of a claim or interest is hereby notified that: (a) any discussion of U.S. Federal Tax issues in this disclosure statement is not intended or written to be relied upon, and cannot be relied upon, by any holder for the purpose of avoiding penalties that may be imposed upon a holder under the Tax Code; (b) such discussion is included hereby by the Debtor in connection with the promotion or marketing (within the meaning of Circular 230) by the Debtor of the transactions or matters addressed herein; and (c) each holder should seek advice based upon its particular circumstances from an independent tax advisor.

1

Certain of the materials contained in this Disclosure Statement are taken directly from other, readily accessible instruments or are digests of other instruments. While the Debtor has made every effort to retain the meaning of such other instruments or the portions transposed, it urges that any reliance on the contents of such other instruments should depend on a thorough review of the instruments themselves.

No representations concerning the Debtor or the Plan are authorized other than those that are set forth in this Disclosure Statement. Any representations or inducements made by any person to secure your vote which are other than those contained herein should not be relied upon, and such representations or inducements should be reported to counsel for the Debtor who shall deliver such information to the Bankruptcy Court. Finally, all terms not otherwise defined in this Disclosure Statement shall have the meanings assigned to them under the Plan.

Creditors should read this Disclosure Statement in its entirety prior to voting on the Plan. No solicitation of votes on the Plan may be made, except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code. No other party has been authorized to utilize any information concerning the Debtor or its affairs, other than the information contained in this Disclosure Statement, to solicit votes on the Plan. Creditors and holders of equity interest should not rely on any information relating to the Debtor, other than that contained in this Disclosure Statement and the exhibits attached hereto.

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE ATTACHMENTS, NO REPRESENTATIONS CONCERNING THE DEBTOR, THE ASSETS, THE PAST OPERATIONS OF THE DEBTOR, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.**

**EXCEPT AS SPECIFICALLY NOTED, THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTOR IS NOT ABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY. THE FACTUAL INFORMATION REGARDING THE DEBTOR, INCLUDING THE ASSETS AND LIABILITIES OF THE DEBTOR, HAS BEEN DERIVED FROM NUMEROUS SOURCES, INCLUDING, BUT NOT LIMITED TO, DEBTOR'S BOOKS AND RECORDS, SCHEDULES AND DOCUMENTS SPECIFICALLY IDENTIFIED HEREIN.**

**THE DEBTOR ALSO COMPILED THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT FROM RECORDS AVAILABLE TO IT, INCLUDING, BUT NOT LIMITED TO, PLEADINGS AND REPORTS ON FILE WITH THE BANKRUPTCY COURT, LOAN AGREEMENTS AND BUSINESS RECORDS.**

**THE APPROVAL BY THE BANKRUPTCY COURT OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTY OF THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

**NEITHER THE DEBTOR NOR COUNSEL FOR THE DEBTOR CAN WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT INACCURACIES.  NEITHER THE DEBTOR NOR ITS COUNSEL HAS VERIFIED THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, ALTHOUGH THEY DO NOT HAVE ACTUAL KNOWLEDGE OF ANY INACCURACIES.**

**IF THE REQUISITE VOTE IS ACHIEVED FOR EACH CLASS OF IMPAIRED CLAIMS, THE PLAN IS SUBSEQUENTLY CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR (INCLUDING, WITHOUT LIMITATION, THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN), WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.**

## II.    VOTING PROCEDURES

Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (1) the claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent or unliquidated, or (2) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings, *provided, however*, any claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon motion by the creditor. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.  In addition, a creditor's vote may be disregarded if the Bankruptcy Court determines that the creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Holders of impaired claims who are entitled to vote and fail to do so will not be counted as either accepting or rejecting the Plan.  Nevertheless, if the requisite vote is achieved for your class of impaired claims, you will be bound by the terms of the Plan.

A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement and mailed to creditors entitled to vote. A creditor must (1) carefully review the ballot and the instructions thereon, (2) execute the ballot, and (3) return it to the address indicated thereon by the deadline to enable the ballot to be considered for voting proposes.

**THE DEADLINE FOR RETURNING YOUR BALLOT
IS FEBRUARY 28, , 2022
(THE "VOTING DEADLINE").**

After completion of the ballot, creditors should return the executed ballot in the self-

3

addressed envelope to:

**TEX-GAS HOLDINGS, LLC**
**c/o T. JOSH JUDD**
**ANDREWS MYERS, P.C.**
**1885 SAINT JAMES PLACE, 15TH FLOOR**
**HOUSTON, TX 77056**

**VOTING INFORMATION AND INSTRUCTION FOR COMPLETING THE BALLOT:**

**FOR YOUR VOTE TO BE COUNTED YOU MUST COMPLETE THE BALLOT, INDICATE ACCEPTANCE OR REJECTION OF THE PLAN IN THE BOXES INDICATED ON THE BALLOT AND SIGN AND RETURN THE BALLOT TO THE ADDRESS SET FORTH ON THE PRE-ADDRESSED ENVELOPE.  IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED.**

**IF YOU HOLD CLAIMS IN MORE THAN ONE CLASS UNDER THE PLAN, YOU MAY RECEIVE MORE THAN ONE BALLOT. EACH BALLOT YOU RECEIVE VOTES ONLY YOUR CLAIMS FOR THAT CLASS. PLEASE COMPLETE AND RETURN EACH BALLOT YOU RECEIVE. YOU MUST VOTE ALL OF YOUR CLAIMS WITHIN A SINGE CLASS UNDER THE PLAN TO EITHER ACCEPT OR REJECT THE PLAN. ACCORDINGLY, A BALLOT (OR MULTIPLE BALLOTS WITH RESPECT TO MULTIPLE CLAIMS WITHIN A SINGLE CLASS) THAT PARTIALLY REJECTS AND PARTIALLY ACCEPTS THE PLAN WILL NOT BE COUNTED.**

**THE BALLOT IS FOR VOTING PURPOSES ONLY AND DOES NOT CONSTITUTE AND SHALL NOT BE DEEMED A PROOF OF CLAIM OR INTEREST OR AN ASSERTION OF A CLAIM.**

### III.   <u>IMPAIRMENT OF CLAIMS</u>

A class is "impaired" if the legal, equitable or contractual rights attaching to the claims or interest of that class are modified under a plan. Modification for purposes of determining impairment however, does not include curing defaults and reinstating maturity or cash payment in full. Classes of claims or interests that are not "impaired" under a plan are conclusively presumed to have accepted the plan and are thus not entitled to vote. Classes of claims or interests receiving no distribution under a plan are conclusively presumed to have rejected the plan and thus are not entitled to vote. Acceptances of the Plan are being solicited only from those persons who hold claims in an impaired class entitled to receive a distribution under the Plan.

Under Section 1124 of the Bankruptcy Code, a class of claims or interests is impaired under a plan, **<u>unless</u>**, with respect to each claim or interest of such class, the plan:

1.     Leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or interest; or

4

2.      Notwithstanding any contractual provision or applicable law that entitles the holder of a claim or interest to receive accelerated payment of its claim or interest after the occurrence of a default:

     (a)  Cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in Section 365(b)(2) of the Bankrupt Code;

     (b)  Reinstates the maturity of such claim or interest as it existed before the default;

     (c)  Compensates the holder of such claim or interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

     (d)  Does not otherwise alter the legal, equitable or contractual rights to which such claim or equity interest entitles the holder of such claim or interest; or

3.      Provides that, on the Effective Date the holder of such claim or interest receives, on account of such claim or interest, cash, equal to:

     (a)  With respect to a claim, the allowed amount of such claim; or

     (b)  With respect to an interest, if applicable, the greater of:

        (i)  Any applicable fixed liquidation preference; or

        (ii) Any fixed preference at which the Debtor, under the terms of the security, may redeem the security.

4.      In Article 5 of the Plan, the Debtor has identified the impaired classes of creditors under the Plan. In the event there are questions regarding whether a person is in an impaired class, the person should assume that his or her claim is impaired and vote. If the claim is determined to be impaired, the vote will be considered by the Bankruptcy Court. The Class 2 and 4 holders of claims of the Debtor are impaired under the Plan.

**IMPAIRED CREDITORS ANTICIPATED TO RECEIVE A DISTRIBUTION UNDER THE PLAN ARE BEING SOLICITED TO VOTE. IF YOU HOLD AN ADMINISTRATIVE CLAIM OR UNIMPAIRED CLAIM, THE DEBTOR IS NOT SEEKING YOUR VOTE.**

## IV.   NATURE AND HISTORY OF BUSINESS

### A.   Source of Information and Accounting Method

The Debtor's books are currently maintained under the supervision of D. Elroy Fimrite.

The Debtor is on the accrual method of accounting for recognizing revenue and expenses. The historical financial information contained in this disclosure statement as well as the bankruptcy schedules and statement of affairs was derived from the Debtor's books and records. **THE DEBTOR'S BOOKS HAVE NOT BEEN AUDITED BY AN INDEPENDENT PUBLIC ACCOUNTANT (OTHER THAN AS EXPRESSLY DESCRIBED HEREIN). NO ABSOLUTE REPRESENTATION IS MADE AS TO THE ACCURACY OF THE DEBTOR'S RECORDS. HOWEVER, THE DEBTOR HAS ATTEMPTED TO ACCURATELY REFLECT ITS BUSINESS OPERATIONS.**

### B.   General Information about the Debtor

#### 1.   THE DEBTOR

##### a.   Business Operation Model/Assets

The Debtor was organized on February 26, 2013 under the laws of the State of Delaware. The Debtor is a limited liability company that owns a single tenant industrial facility with a total of 47,312 square feet of gross building area on 17.16 acres of land, located at 1950 FM 3057, Bay City, Matagorda County, Texas 77414 (the "Industrial Facility" or "Property"). The Debtor's primary purposes is to hold title to the real property where the Industrial Facility is located.

The Debtor leases the Industrial Facility to an affiliate, EFG America LLC, pursuant to a triple net lease (the "EFG Lease). EFG America LLC and the Debtor are part of the same consolidated tax group. The monthly lease payment is $1,000.00, which is below market rate. The EFG Lease expires on April 30, 2023.

The corporate structure of the Debtor and its affiliates is as follows:



6

The Property consists of five (5) buildings consisting of a manufacturing building, a motor control center, a primary warehouse, a control room and a two story office building. The site is also improved with various personal property which was never operated. The site improvements consist of 2.2 MVA electric service, with available 19.2 kV electric power, natural gas, oxygen and nitrogen pipelines, an on-site well, and on-site septic system. Other site improvements include a security fence around the entire perimeter, a heavy crane, motorized security gate, lighting, concrete parking and concrete access roads that cover approximately 3 acres, storm water management areas, storage tanks and containment areas, rail spur, and planted grasses.

An aerial photograph of the Property is below:



A December 31, 2019 appraisal of the Property valued the Industrial Facility (with all improvements and equipment) as follows:

| | |
|---|---|
| Real Estate (with improvements) | $ 7,910,000 |
| Equipment on site (non-debtor property): | $44,380,000 |
| **TOTAL:** | **$52,293,000** |

b.   Liabilities

The Debtor's liabilities on the petition date, or as subsequently asserted in proofs of

7

claims filed by creditors, are set forth as follows:

| Name | Amount | Comment |
|---|---|---|
| Matagorda County, et al. | $  92,449 | 2019 & 2020 taxes  2021 taxes were timely paid by tenant. |
| East Breifne, LLC | $4,125,000 | First lien note |
| Fortune Insight Limited | $           0 | Disputed (unfunded) note. Default judgment granted in favor of Debtor on January 7, 2022. |
| EF Global Corporation | $    30,000 | Class 3. Advancement of retainer |
| EFG America LLC | $    58,973 | Class 3. |
| Eversource Capital | $   600,000 | Proof of claim filed. Settled and paid by non-debtor in January 2022, and claim withdrawn by creditor. |
| Lui So Yuk | $5,689,790 | Proof of claim filed as secured. Unsecured claim in the amount of $400,980.00 per judgment entered at Doc. 95, in Adversary No. 21-80002. |
| Sham Wai Bun | $3,793,193 | Proof of claim filed as secured. Unsecured claim in the amount of $267,320.00 per judgment entered at Doc. 95, in Adversary No. 21-80002. |

Secured Liabilities

Debtor executed and delivered to East Breifne a promissory note in the original principal amount of $3,000,000, as (the "First Lien Note").  The First Lien Note is secured by a deed of trust on the Property.

Priority Tax Claims.   The Debtor is treated as a pass through entity for income tax purposes and, as such, is not subject to income taxes. The Debtor's federal tax status as a pass through entity is based upon its legal status as a partnership, and the Debtor files as part of a consolidated tax group with EF Global Corporation.  No taxes are owed by the Debtor for 2020.

General Unsecured Claims. The Debtor scheduled approximately $88,000 in general unsecured claims.  On October 12, 2021, Eversource Capital filed a unsecured proof of claim asserting a claim of $600,000 based upon a pre-petition settlement in case no. 18-cv-2583, that was pending in the District Court of Arizona.  .  The Eversource claim was subsequently paid in full by a non-debtor in January 2022, and the proof of claim was subsequently withdrawn.

Administrative Claims Analysis

The only administrative expenses will be U.S. Trustee fees, accrued professional fees and the administrative claim of EFG America for replenishment of the legal fee retainer.

As of January 31, 2022, Andrews Myers had incurred post-petition legal fees and expenses totaling $177,194.68.. Pursuant to the orders authorizing replenishment of retainer, an additional $60,000 has been advanced by EGF America to replenish the retainers. After notice, Andrews Myers has drawn down the additional retainer.  An additional $75,000.00 in legal fees and expenses is expected.

In summary, the Debtor will have sufficient funds to satisfy ordinary course post-petition payables and attorneys fees. By agreement, the Debtor and EFG America have agreed that funds advanced by EFG America will not be paid until the First Lien Note is paid in full or refinanced. Based on the foregoing, the Debtor believes that it will have sufficient funds to pay all administrative expense claims which will come due on the Effective Date.

2.   THREATENED WRONGFUL FORECLOSURE.

As described in detail in Adversary Proceeding No. 21-08002 Tex-Gas Holdings, LLC, v. Lui So Yuk, et al., pending in the United States Bankruptcy Court for the Southern District of Texas, Galveston Division (the "Fortune Insight Litigation"). The Fortune Insight Litigation is currently pending before the Court. The Reorganized Debtor has no monetary obligation to any of the Defendants in the Fortune Insight Litigation and the Fortune Insight Litigation Defendants have no Allowed Claim against the Debtor or its property. On January 7, 2022, the Court granted a default judgment against Fortune Insight Limited. See Docket 79 in the Fortune Insight Litigation. The Court held that the Deed of Trust recorded on July 21, 2020, in the real property records of Matagorda County is extinguished and avoided. Trial on the merits regarding the proofs of claims filed by Lui So Yuk and Sham Wai Bun was conducted on February 17-18, 2022, and the Court entered a judgment that the Deed of Trust held by Yuk and Bun is extinguished, and that Bun has a general unsecured claim against the Debtor in the amount of $267,320.00, and Yuk has a general unsecured claim against the Debtor in the amount of $400,980.00.

3.   FINANCIAL SITUATION AS OF PETITION DATE

As mentioned above, the Debtor is part of a consolidated tax group and was organized to be a real estate holding company without further operations. The Debtor's affiliates own certain technology and proprietary methods related to engineered elastomers related to recovered polymetric waste using an environmentally benign process.

4.   OWNERSHIP AND MANAGEMENT

a.   General Overview & Management

Elroy Fimrite oversees the Debtor's day to day operations and is President of the Debtor. At present, Mr. Fimrite is not being paid for management of the Debtor's business affairs.  Mr. Fimrite is authorized to prosecute the bankruptcy case. The Debtor expects the same management to remain in place after Plan confirmation.

b.   Capital Structure

The Debtor is a Delaware limited liability company. The Debtor's equity holder is EF Global Corporation.

5.   SIGNIFICANT ACTIONS IN BANKRUPTCY CASE

a.   Voluntary Petition filing

The Debtor filed for Chapter 11 relief on June 1, 2021, due to the wrongful foreclosure attempts by Lui So Yuk and Sham Wai Bun. The Debtor continues to operate as a debtor-in-possession subject to the supervision of the Bankruptcy Court and in accordance with the Bankruptcy Code and is authorized to operate its business and manage its property in the ordinary course, with transactions outside of the ordinary course of business requiring Bankruptcy Court approval. An immediate effect of the filing of the Debtor's bankruptcy petition is the imposition of the automatic stay under the Bankruptcy Code which, with limited exceptions, enjoins the commencement or continuation of all collection efforts by creditors, the enforcement of any purported Liens against property of the Debtor, and the continuation of litigation against the Debtor. The relief provides the Debtor with the "breathing room" necessary to reorganize its business and prevents creditors from obtaining an unfair recovery advantage while the Chapter 11 Case is ongoing.

b.   Administration – "First Day" Motions

The day of filing the Chapter 11 Case, the Debtor filed several applications and motions seeking relief by virtue of so-called "first day motions." First day motions are intended to facilitate the transition between a debtor's pre-petition and post-petition business operations by approving certain regular business practices that may not be specifically authorized under the Bankruptcy Code or as to which the Bankruptcy Code requires prior approval by the bankruptcy court. The first day orders the Debtor obtained in this Chapter 11 Case, which is typical of orders entered in business reorganization cases across the country, authorize, among other things:

c.   Employment of Professional Persons

The Debtor is represented in this Chapter 11 proceeding by T. Josh Judd and the law firm of Andrews Myers, P.C. (the 'Firm"), and filed an Application to Employ the Firm shortly after its bankruptcy filing. The Bankruptcy Court approved the employment of the Firm on July 7, 2021.

C.   **Case Management Going Forward**

1.   PLAN

The original deadline for the Debtor to file a Plan and Disclosure Statement was September 29, 2021.  The Debtor timely filed a Disclosure Statement and Plan.  The exclusivity for the Debtor to file and confirm a plan under 11 U.S.C. § 1121(b) and (c) has been extended until March 4, 2022.

10

2. ASSUMPTION AND REJECTION

Bankruptcy law allows the Debtor to assume or reject any pending lease agreements or executory contracts that exist on the date of the order for relief. Additionally, the law provides that the Debtor can assign its interest in lease agreements and executory contracts provided they cure all defaults and provide adequate assurance that the assignee will comply with the terms of the lease or contract. Executory contract and lease assumption and rejection are treated in the Plan. Any contract or lease not specifically assumed in the Plan, or by prior court order, is deemed rejected. The Debtor is assuming the lease with the current tenant of the Industrial Facility.

## V.     DESCRIPTION OF PLAN

### SUMMARY OF THE PLAN OF REORGANIZATION

**THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE AND IMPLEMENTATION OF THE PLAN AND THE CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, AND TO THE EXHIBITS ATTACHED THERETO.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE PLAN AND IN DOCUMENTS REFERRED TO THEREIN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE PRECISE OR COMPLETE STATEMENTS OF ALL THE TERMS AND PROVISIONS OF THE PLAN OR DOCUMENTS REFERRED TO THEREIN, AND REFERENCE IS MADE TO THE PLAN AND TO SUCH DOCUMENTS FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.  THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN WILL CONTROL THE TREATMENT OF CLAIMS AGAINST, AND INTERESTS IN, THE DEBTOR UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR, THE REORGANIZED DEBTOR, AND OTHER PARTIES IN INTEREST. IN THE EVENT OF ANY CONFLICT BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN OR ANY OTHER OPERATIVE DOCUMENT, THE TERMS OF THE PLAN AND/OR SUCH OTHER OPERATIVE DOCUMENT WILL CONTROL.**

### A.     Overall Structure of the Plan

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize its business for the benefit of its creditors and equity holders. Upon the filing of a petition for relief under Chapter 11, Section 362 of the Bankruptcy Code provides for an automatic stay of substantially all acts and proceedings against the debtor and its property, including all attempts to collect claims or enforce liens that arose prior to the commencement of the Chapter 11 Case.

The consummation of a plan of reorganization is the principal objective of a Chapter 11 case.  A plan of reorganization sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan of reorganization by the Bankruptcy Court makes the plan binding upon the debtor, any issuer of securities under the plan, any person acquiring property under the plan, and any creditor of, or equity security holder in the debtor, whether or not such creditor or equity security holder (i) is impaired under or has accepted the plan or (ii) receives or retains any property under the plan. Subject to certain limited exceptions, and other than as provided in the plan itself or the confirmation order, the confirmation order discharges the debtor from any debt that arose prior to the date of confirmation of the plan and substitutes for such debt the obligations specified under the confirmed plan, and terminates all rights and interests of equity security holders.

The Plan should be read carefully and independently of this Disclosure Statement. The following analysis of the Plan is intended to provide a context for understanding the remainder of this Disclosure Statement and to assist in an understanding of the Plan and the proposed treatment of the Creditors.

The Debtor expects to implement its plan and continue in its business restructuring which should provide full compliance with the plan. The Debtor's affiliates have a strong core business, with the expectation that their revenues will substantially improve when the technology matures. At that point, the Debtor it can re-lease the property at market rates.

The terms of the Debtor's Plan are based upon, among other things, the Debtor's assessment of its ability to achieve the goals of its business plan, make the distributions contemplated under the Plan, and pay its continuing obligations in the ordinary course of business.  Under the Plan, Claims against and Interests in the Debtor are divided into Classes according to their relative seniority and other criteria.

A copy of the Plan is attached as Exhibit A.  Generally, If the Plan is confirmed by the Bankruptcy Court and consummated, (1) Allowed Administrative Claims and Priority Non-Tax Claims will be paid in cash in full; (2) Allowed Ad Valorem Claims of Taxing Authorities will be paid in full in cash on the Effective Date, or when they are due (by the tenant); (3) Allowed Secured Claims of the Debtor's lender will be paid by delivery of secured first lien promissory note from the Reorganized Debtor for $4,546,999[1], with  interest at the prime rate plus 4.75%; (4) Allowed Unsecured Claims will be paid in full with interest in equal quarterly  installments, beginning twelve months after theEffective Date or the date that such claims become Allowed Claims; and (5) the current equity holder will maintain its equity interest in the Reorganized Debtor.

**B.    Administrative Expenses and Priority Tax Claims and Timing of Payment**

The Holders of Administrative Expense Claims against the estate and Tax Claims are treated as generally described below.

---

[1] The exact claim amount will be determined at Plan confirmation hearing.

Payment of Administrative Claims.  Each Holder of an unpaid Allowed Administrative Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless the Holder of such Claim agrees to a different treatment. All payments to professionals for actual, necessary services and costs advanced in behalf of the bankruptcy up until the Confirmation Date shall be pursuant to Bankruptcy Court order and subject to the restrictions of 11 U.S.C. §330. Professional fees incurred for services rendered and costs advanced subsequent to the Effective Date shall be the liability of the Reorganized Debtor. The professional fees and expenses owed to Andrews Myers through January 312022, is approximately **$177,194.68**.

Payment of Non-Tax Priority Claims. Each Holder of an unpaid Allowed Non-Tax Priority Claim, if any, shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Non-Tax Priority Claim, unless the Holder of such Claim agrees to a different treatment. No non-tax priority claims are expected.

## C.  Classes of Priority, Secured and Unsecured Claims and Treatment of Interests

The Classes of Claims against and Interests in the Debtors created under the Plan, the treatment of those Classes under the Plan, and the other property to be distributed under the Plan, are generally described below.

### Class 1. Allowed Secured Claim of Taxing Authorities.

Class 1 consists of the Allowed Secured Claims of Ad Valorem taxing authorities for amounts that remain due and owing for 2019 and  2020 secured by a first lien on all of the Debtor's assets.

Treatment: The Allowed Secured Class 1 Claims shall be paid in cash in full with interest at the statutory rate. The 2019 and 2020 taxes will be paid on the Effective Date of the Plan by the Debtor. The Class 1 claim will be timely paid without the necessity of the filing of administrative expense claims or requests for payment, and if not so timely paid, will be subject to state court collection procedures without the necessity of further recourse to the Bankruptcy Court. Notwithstanding anything in the Plan or Confirmation Order to the contrary, any and all tax liens securing the prepetition and post-petition ad valorem taxes of Matagorda County, and Bay City, ISD, et al., are retained. The 2021 taxes were paid when due, without penalty or interest by the Tenant. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, any and all tax liens securing the prepetition and post-petition ad valorem taxes of Matagorda County, and Bay City, ISD, et. al., are retained. All post-petition ad valorem tax liabilities (tax year 2022 and subsequent tax years) owing to Matagorda County, et. al., shall be paid in the ordinary course of business as such tax debt comes due without the need of Matagorda County, and Bay City, ISD, et. al., to file an administrative expense claim and/or request for payment.

13

The Class 1 Claims are unimpaired.

**Class 2. Allowed Secured Claims of East Breifne.**

Class 2 consists of the Allowed Secured Claims of East Breifne secured by a lien on substantially all of the Debtor's assets.

<u>Treatment:</u>  The holder of the Class 2 Claim shall have an Allowed Secured Claim in the amount of $4,546,999.05[2] as of the Effective Date.

New Loan Documents: The East Breifne Borrowers shall on the Effective Date execute an Amended and Restated Note to reflect the balance of East Breifne Allowed Claim (the "EB New Note"). The terms of the EB New Note shall provide that interest will accrue at prime rate, plus 4.75% (fixed at 8%), with monthly interest payments as provided on Exhibit B. The EB New Note will mature in two (2) years from the Effective Date. The EB New Note will continue to be secured by a first lien deed of trust on the Industrial Facility and related security agreements, in the form substantially similar to the pre-petition loan documents. The monthly interest payments will be approximately $30,313. There will be no pre-payment penalty under the EB New Note.

The East Breifne Borrowers shall be obligated, jointly and severally, under the EB New Note to begin payments on the fifth day of February 2022, and monthly interest payments each month thereafter.  The Class 2 Claims are impaired.

**Class 3.  Allowed Unsecured Claims**

Class 3 consists of the Allowed Unsecured Claims of non-insiders.

<u>Treatment:</u>  The Holders of Allowed Unsecured Class 3 Claims shall be paid in full with interest in equal quarterly  installments, beginning on the later of first day of the twelfth  month from the Effective Date, or the date such Claims become Allowed Claims, through the sixtieth month from the Filing Date..  The Class 3 Claims are unimpaired.

**Class 4.  Allowed Interests of Equity Holders.**

Class 4 consists of the Allowed Equity Interests in the Debtor.

<u>Treatment:</u>  Holders of Equity Interests shall retain their interests in the Reorganized Debtor but shall receive no distributions until the Class 1, 2 and 3 Allowed Claims are paid in full. Class 4 is impaired.

**D.      <u>Means of Execution of Plan:</u>**

---

[2] The exact amount of the East Breifne Allowed Claim shall be established at the plan confirmation hearing and identified in the Order Confirming Plan. The claim amount represents the principal amount owed, plus accrual of unpaid interest at 24%.

1.   VESTING OF PROPERTY OF THE ESTATE IN REORGANIZED DEBTOR. On the Effective Date of the Plan, all property of the Debtor and of its Estate shall vest in the Reorganized Debtor free and clear of liens, claims and encumbrances, except as otherwise provided by the terms of this Plan, including but not limited the East Breifne's retention of its liens as provided for in the Plan, and statutory property tax liens.

2.   CONTINUATION OF BUSINESS OPERATIONS. From and after the Effective Date of the Plan, the Reorganized Debtor shall be authorized to continue its normal business operations and enter into such transactions as it deems advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan. The Equity Contribution and the cash flow of the operations shall be used to fund payments required by the Plan.

3.   Directors and Officers of Reorganized Debtors. D. Elroy Fimrite will continue to serve as the President the Debtor, from and after the Effective Date of the Plan. Except for reimbursement of actual expenses, Mr. Fimrite will not receive any distributions/payments from the Debtor until the Class 1, 2, and 3 Claims are paid in full.

4.   Source of Funds for Payments due on the Effective Date.  Cash on hand, collection of rents from the EFG Lease, and the Equity Contribution will be used to pay Administrative and other Claims as required by the Plan.

**E.    Bar Dates**.

1.   ADMINISTRATIVE CLAIMS BAR DATE.  Any Holder of an Administrative Claim (including any cure Claims for executory contracts or leases that are assumed pursuant to this Plan, including Lease Claims) against the Debtor, except for administrative expenses incurred in the ordinary course of operating the Debtor's business, must file an application for payment of such Administrative Claim on or within thirty (30) days after entry of the Confirmation Order with actual service upon counsel for the Debtor, otherwise such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim, be entitled to no distribution and no further notices. The Debtor shall pay pre-confirmation quarterly U.S. Trustee fees in full in Cash within thirty (30) days after the Effective Date. U.S. Trustee fees which accrue after confirmation shall be paid by the Reorganized Debtor until the case is closed or converted.  The Debtor shall file with the Court and serve on the United States Trustee a monthly financial report for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee. It is not necessary for the U.S. Trustee to file a proof of claim.

2.   UNSECURED CLAIMS BAR DATE. The deadline for filing a proof of claim for an unsecured claim of a non-governmental entity (other than a claim for damages stemming from the rejection of an executory contract or lease) was October 12, 2021.

15

3. R̲EJECTION̲ D̲AMAGE̲ C̲LAIM̲ B̲AR̲ D̲ATE̲.   An Unsecured Claim arising from the rejection of an executory contract or unexpired lease must be filed no later than 20 days after the Effective Date of the Plan.

**F.**      **Summary of Financial Projections**

Attached hereto as Exhibit B are detailed financial projections prepared by management. The projections include the monthly forecast results for the balance of 2022 through 2023, and annual forecast for 2024 through 2027. The statements include projected cash flow forecasts and assumptions. The projections are conservative and establish that the Reorganized Debtor will be able to make the payments provided for in the Plan.

The EFG Lease expires on April 30, 2023. The Debtor expects that the Tenant's business operations will have matured by the expiration of the lease, at which time the Debtor will negotiate a market rate lease.

**VI.      LIQUIDATION ANALYSIS**

Section 1129 of the Bankruptcy Code provides that the Court may confirm a plan of reorganization only if certain requirements are met.  One of these requirements is that each non-accepting holder of an allowed Claim or interest must receive or retain under the Plan, on account of such Claim or interest, property as of the Effective Date of the Plan at least equal to the value of such holder would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

For the purposes of the following discussion, it is assumed that a Chapter 7 trustee would seek to maximize the value of the estate by attempting to sell the Property. However, the Debtor believes that the circumstances surrounding liquidation under Chapter 7 would inevitably lead to selling conditions which would substantially detract from the total value returned to the estate. The following are some, but not all, of the deleterious consequences that the Debtor believes would result from Chapter 7 liquidation:

- Substantial Chapter 7 administrative costs relating to professional fees, management fees, broker commissions, sales commissions and other associated expenses would necessarily be incurred.

- The sale of the Debtor's assets and business under the time pressure and adverse publicity attendant to Chapter 7 liquidation would create a difficult selling environment and would result in a transaction consummated at a substantial discount to going-concern value. Further, US finance markets are currently distressed and make an estimation (or prediction) of the liquidation value of the Property speculative.

- If the case is converted to a case under Chapter 7 of the Bankruptcy Code, Lender will likely foreclose on all of the assets, leaving a "no asset case." Under this scenario, only Lender and the holders of ad valorem taxing authorities will receive a distribution and all other classes of claimants (including administrative claimants) will not recover on their

16

Claims. The Debtor believes that this would be the likely result if the case is converted to Chapter 7.

Taking such matters into consideration, the Debtor has prepared the following liquidation analysis such that the holders of non-priority general unsecured claims could expect a dividend of zero.  Furthermore, the Debtor expects that the process of winding down the Debtor's affairs, objecting to claims and making dividends would likely take nine to twelve months.

### A.    Methodology.

The starting point in determining the amount which members of each impaired class of unsecured claims and interests would receive in a Chapter 7 case is to estimate the dollar amount that would be generated from the liquidation of the Debtor (the "Liquidation Proceeds"). The Liquidation Proceeds of the Debtor would consist of the proceeds from the sale of the Property. The present value of the distribution from the Liquidation Proceeds is then compared with the present value offered to each of the classes of unsecured claims and interests of each such class.

### B.    Analysis.

A Liquidation Analysis reflecting the liquidation value of the Debtor's assets and the corresponding return to unsecured creditors in the event of liquidation is attached hereto as Exhibit "C".  The return to unsecured creditors is 0% because the assets have a liquidation value of less than the amount of secured liens.. Thus, if this case was converted to Chapter 7, the General Unsecured Creditors would not receive a distribution on their claim.

However, under the proposed Plan, the Class 2 Secured Claim and the Class 3 General Unsecured Creditors are scheduled to have their Allowed Claims paid in full as set forth above. Thus, the total value of the proposed distribution to Creditors exceeds the amount that can reasonably be expected in liquidation.

## VII.    RISKS POSED TO CREDITORS

The principal risk to the creditors is that the Plan will not be confirmed. Absent confirmation of the Plan, East Breifne may obtain stay relief and unsecured creditors would not receive any distribution on account of their Claims.

## VIII.  ALTERNATIVES

Although the Disclosure Statement is intended to provide information to assist creditors in making a judgment on whether to vote for or against the Plan, and although creditors are not being offered through that vote an opportunity to express an opinion concerning alternatives to the Plan, a brief discussion of alternatives to the Plan may be useful. These alternatives include conversion to a Chapter 7 or dismissal of the proceedings. The Debtor of course, believes the proposed Plan to be in the best interests of creditors. The Debtor assesses the alternatives as

17

follows:

**A.      Conversion to Chapter 7**

The first alternative would be to convert the Chapter 11 case to a Chapter 7 liquidating bankruptcy. If this occurred, the Bankruptcy Court will appoint a trustee to liquidate the Debtor's assets for the benefit of its creditors. The costs associated with a trustee would then be added to the additional tier of administrative expenses entitled to priority over general unsecured claims upon conversion.  Such administrative expenses include the Chapter 7 Trustee's commissions, as well as fees for professionals retained by the Chapter 7 Trustee to assist in the liquidation. The Trustee's commissions are based on disbursements to creditors. The Trustee receives 25% of the first $5,000, 10% of the next $45,000, 5% of the next $950,000 and 3% on all amount disbursed in excess of $1 million.

In a Chapter 7 case, the secured lender would lift the stay and foreclose on the Debtor's assets, and unsecured creditors would receive no distribution on account of their claims.

**B.      Dismissal**

Dismissal of the proceeding would likely result in the Debtor defending debt-collection litigation and numerous new lawsuits to collect debts. The Secured Lender would foreclose on substantially all of the Debtor's assets, halting the Debtor's operations. Even if there were unencumbered assets, the creditors who receive quick judgments will be able to execute and recover their claims leaving nothing for the remaining creditors.

**C.      No Assurance of Either**

There are other possibilities which are less likely, such as a competing plan proposed by a different party. The Debtor has attempted to set forth the reasonable alternatives to the proposed Plan. However, the Debtor must caution creditors that a vote must be for or against the Plan. The vote on the Plan does not include a vote on alternatives to the Plan. There is no assurance what course the proceedings will take if the Plan fails acceptance.

**IX.      CERTAIN FEDERAL INCOME TAX CONSEQUENCES**

**A.      Tax Consequences to Creditors**

1. GENERALLY

The tax consequence to any particular creditor may vary depending on their own circumstances and they should consult with their own tax professional for advice regarding the impact on them of their acceptance or rejection of the plan.

2. UNSECURED CLAIMS

Holders of Class 3 Unsecured Claims will receive distributions from the Debtor. A Class

3 Claimholder should either be treated as (i) recognizing ordinary income in an amount equal to cash received and recognizing a loss in an amount equal to the tax basis in the Claim or (ii) recognizing a loss equal to the difference between the amount of cash received and their tax basis in their Claim.

A Claimholder's tax basis in a Claim should generally equal the amount included in income as a result of the provision of goods or services to the Debtor, except to the extent that a bad debt loss had previously been claimed. The gain or loss with respect to the Claim should be ordinary to the extent that it arose in the ordinary course of trade or business for services rendered or from the sale of inventory to the Debtor.

**DUE TO THE COMPLEX NATURE OF APPLICABLE TAX LAWS, CLAIMANTS SHOULD CONSULT WITH THEIR TAX PROFESSIONAL CONCERNING COMPLIANCE WITH AND THE AFFECT OF BOTH STATE AND FEDERAL TAX LAWS ON THEIR INTEREST BEFORE THEY CAST A BALLOT TO ACCEPT OR REJECT THE PLAN.**
**THE ATTORNEYS AND THE MANAGEMENT OF THE DEBTOR MAKE NO REPRESENTATIONS HEREIN CONCERNING THE IMPACT OF THE TAX LAW ON ANY INDIVIDUAL TREATED UNDER THE PLAN.**

> **B.**     **Tax Consequences to the Debtor.**

The Debtor is treated as a pass through entity for income tax purposes and, as such, is not subject to income taxes. Rather, all items of taxable income, deductions and tax credits are passed through to and are reported by its equity holders on their respective income tax returns. The Debtor's federal tax status as a pass through entity is based upon its legal status as a partnership. Accordingly, the Debtor is not required to take any tax positions in order to qualify as a pass-through entity.

> **X.**     **PREFERENCES AND FRAUDULENT TRANSFERS**

Under the Bankruptcy Code and Texas State Law, the bankruptcy estate may sue to recover assets (or their value) that were transferred by "voidable transfers", which includes assets transferred:

> (A)     in fraud of Creditors,

> (B)     in constructive fraud of Creditors – because the asset was transferred without sufficient consideration while the Debtor was insolvent,

> (C)     as a preferential transfer - a payment before bankruptcy outside the ordinary course that allows a creditor to receive more than it would receive in liquidation, or

19

(D)      as an unauthorized post-bankruptcy transfer by the Debtor outside of the ordinary course.

The Debtor does not believes there are certain transfers voidable under Section 550, 547, 548, 544, or similar provision of the Bankruptcy Code because the Debtor was solvent.

All post-bankruptcy payments have been in the ordinary course, or otherwise authorized by the Court.  Accordingly, the Debtor does not believe that any transfers are avoidable under Section 549 of the Bankruptcy Code.  On the basis of this analysis, the Plan releases all such Section 549 causes of action against all parties.

If the Plan is not confirmed and a liquidating trustee or Chapter 7 trustee is appointed, it is possible that the trustee's analysis will differ from that of the Debtor and that other avoidance actions will be commenced against other Creditors of the estate or insiders.

## XI.    LITIGATION

The Debtor was one of approximately twenty-five named defendants in litigation filed by Eversource Capital LP, in the U.S. District Court of Arizona. The claims asserted by Eversource were highly disputed, were settled, and the litigation has been dismissed with prejudice.

Except for litigation described in Adversary Proceeding 21-08002 (the "Fortune Insight Litigation"), no other litigation claim or environmental liability has been made. The Debtor is not a party to any other litigation.

On January 7, 2022, the Bankruptcy Court entered an Order Granting Debtor's Motion for Default Judgment against Fortune Insight Limited (the "Default Judgment") in the Fortune Insight Litigation. A copy of the Default Judgment is available upon request and is available for download at  https://pcl.uscourts.gov/pcl/pages/welcome.jsf, adversary no. 21-8002, docket entry 79.  The Default Judgment held, among other things, that Deed of Trust held by Fortune Insight Limited is void and expunged, that Fortune Insight Limited breached the Note, and Fortune Insight defrauded the Debtor.

The Debtor completed its discovery against the remaining defendants in the Fortune Insight Litigation. Based upon documents received and the depositions conducted, the Debtor believes that it, along with its non-debtor affiliates, have causes of action against Paul Heffner (and his estate) and Net Effect Limited. The Debtor, and its non-debtor affiliates, intend to pursue such causes of action against Mr. Heffner's estate and Net Effect Limited in a court of competent jurisdiction. The Debtor (and the Reorganized Debtor, as applicable), specifically preserve all causes of action related to Mr. Heffner and Net Effect Limited, including in their dealings with Lui So Yuk and Sham Wai Bun, and resulting wrongful attempts to pledge collateral.

On February 17-18, the Bankruptcy Court conducted a consolidated trial on the merits in Adversary Proceeding 21-8002 and the Debtor's Objections to the Proofs of Claims filed by Yuk and Bun. On February 25, 2022, the Bankruptcy Court issued an amended memorandum opinion

and corresponding judgment (collectively, the "Judgment").  The Judgment provides that Deed of Trust recorded at Document Number 3870 as recorded in the Official Records of Matagorda County, Texas on July 21, 2020, is not an enforceable lien interest against the debtor's real property described as 17.16 acres of land and improvements located at 1950 FM 3057, Bay City, Matagorda County, Texas 77414 and is extinguished. In addition, the Judgment provides that Claims Nos. 3-1 and 4-1 shall be disallowed as secured claims but allowed as unsecured claims in the amounts of $267,320.00 and $400,980.00.

## XII.    MANAGEMENT OF THE REORGANIZED DEBTOR

### A.    Officers of the Debtor

D. Elroy Fimrite is the President and sole Manager of the Debtor. Current management will remain in place for the Reorganized Debtor.

### B.    Management Compensation

Currently, Mr. Fimrite receives no compensation. Mr. Fimrite will not receive any distributions from the Debtor until the Class 1, 2 and 3 creditors are paid in full.

## XIII.   ACCEPTANCE AND CONFIRMATION OF THE PLAN

### A.    Acceptance of the Plan

Confirmation of a Plan under Chapter 11 requires, among other things, that at least one class of creditors or claimants, such as the secured or unsecured creditors in this case, vote in favor of the Plan.  This vote is calculated by only counting those creditors who actually send in a ballot on time. If two thirds in total dollar amount and a majority in number of claims actually voting in a class approve the Plan, that class of creditors is considered an accepting class.  If the vote is insufficient, the Court can still confirm the Plan, but only upon being provided additional proof regarding the ultimate fairness of the Plan to the creditors. The Debtor believes that the unsecured creditors will support the Plan when they consider the fact that the secured and priority creditors will receive the majority of all of the assets of the Debtor in the event the reorganization is unsuccessful.

The proponent of a Plan also must meet all other applicable requirements of Section 1129(a) of the Bankruptcy code (except Section 1129(a)(8), if the proponent proposes to seek confirmation of a Plan under Section 1129(b) of the Bankruptcy Code). These other requirements include, among other things, that the Plan comply with the applicable provisions of Title 11 and other applicable law, that the Plan be proposed in good faith, and that at least one impaired class of creditors vote to accept the Plan. The Debtor believes that the Plan satisfies all other applicable requirements of Section 1129(a) of the Bankruptcy Code. A copy of the proposed form of ballot to be used for voting on the Plan is attached hereto as Exhibit "D."

21

### B.       Confirmation without Acceptance of All Impaired Classes

The Bankruptcy Court may confirm a plan even if not all impaired classes accept the Plan.  For the Plan to be confirmed over the rejection of an impaired class, the proponent must show, among other things, that the plan does not discriminate unfairly and that the plan is fair and equitable with respect to each impaired class that has not accepted the plan.

Under Section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a class if, among other things, the plan provides:  (a) with respect to secured claims, that each holder of a claim included in the rejecting class will receive or retain, on account of its claim, property that has a value as of the Effective Date of the plan, equal to the allowed amount of such claim; and (b) with respect to unsecured claims and interests, that the holder of any claim or interest that is junior to the claims or interest of such class will not receive or retain, on account of such junior claim or interest, any property unless the senior class is paid in full.  The Bankruptcy Court must further find that the economic terms of a plan do not unfairly discriminate as provided in Section 1129(b) of the Bankruptcy Code with respect to the particular objecting class.

**THE DEBTOR BELIEVES THAT THE PLAN HAS BEEN STRUCTURED SO THAT IT WILL SATISFY THE REQUIREMENTS OF SECTION 1129(b) OF THE BANKRUPTCY CODE AND CAN BE CONFIRMED OVER THE REJECTION OF THE PLAN BY SECURED CREDITORS, IF A CRAMDOWN IS REQUESTED.   THE DEBTOR BELIEVES THAT THE UNSECURED CREDITORS WILL SUPPORT THE PLAN SINCE THE ALTERNATIVE, LIQUIDATION, WILL LIKELY PAY THE SECURED CREDITORS THE MAJORITY OF THE ESTATES' ASSETS, LEAVING LITTLE OR NO RETURN TO UNSECURED CREDITORS.**

### C.       Other Requirements for Confirmation

In order to obtain confirmation of the Plan, the requirements of Section 1129 of the Code must be satisfied. These requirements include but are not limited to findings that the Plan complies with the applicable provisions of Chapter 11 of the Code, that the Debtor has complied with the applicable provisions of Chapter 11 of the Code, that the Plan has been proposed in good faith and not by any means forbidden by law, and at least one class of impaired claims has voted to accept the Plan. The Debtor believes that the Plan satisfies all the statutory requirement of Chapter 11 of the Bankruptcy Code.

#### 1.    BEST INTEREST OF CREDITORS

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each class, that each holder of a claim or interest of such class either (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date, that is not less than the amount that such person would receive or retain if the Debtor was, on the effective date, liquidated under Chapter 7 of the Bankruptcy Code.  As set forth above, the Debtor believes that this test will be satisfied.

2.   FINANCIAL FEASIBILITY

The Bankruptcy Code requires that, in order for the Plan to be confirmed by the bankruptcy court, the bankruptcy court must determine that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor.  The Debtor believes that it will be able to fulfill its obligations under the Plan.

Attached hereto as Exhibit "B" is the Debtor's projection demonstrating the feasibility of the Plan. Exhibit "B" was prepared by Debtor's management from historical data and a projection model that assumes that revenue will be produced as projected by use of the current facilities and equipment. The Debtor believes that it is sufficient to support additional business and will continue to increase its revenues. This pro forma indicates that the Debtor will be able to survive on a post-confirmation basis.

To the extent revenue of the Debtor is insufficient to fund the payments on the Effective Date; the equity infusion will be used to fund the Plan.

**D.** **Cram-Down - Confirmation Without Acceptance by All Impaired Classes**

The Bankruptcy Code contains provisions for confirmation of a Plan even if the Plan is not accepted by all impaired classes, provided that at least one impaired class of claims has accepted it (determined without including any acceptance by any insider holding a claim of such class).  These "cram-down" provisions, for confirmation of a Plan despite the non-acceptance of one or more impaired classes of claims or interests, are set forth in Section 1129(b) of the Bankruptcy Code.

In the event that any impaired class of claims does not accept the Plan by the requisite majority set out in the introduction, the Debtor must demonstrate to the Bankruptcy Court, with respect to each impaired class which does not accept the Plan that the Plan does not discriminate unfairly, and is "fair and equitable" with respect to that class.  Under the Bankruptcy Code, a Plan is considered "fair and equitable" with respect to secured claims, unsecured claims or interest, as the case may be, if the following conditions are met:

    (a)    Secured Claims.   The holders of such claims retain their liens, to the extent of the allowed amount of their secured claims, and that each holder of such a claim receive on account of such secured claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the Plan, of at least the value of such holder's interest in the estate's interest in the collateral.

    (b)    Unsecured Claims.  Either (i) each impaired unsecured creditor receives or retains under the Plan property of a value as of the effective date of the Plan equal to the amount of its allowed claim, or (ii) the holder of any

23

claim or interest that is junior to the claims of the dissenting class will not receive or retain any property under the Plan.

The Debtor believes that the Plan meets the "fair and equitable" test and does not discriminate unfairly with respect to any class of creditors or interest holders. Therefore, the Plan may be confirmed, even if it is rejected by the holders of allowed claims and interests.

## XIV. <u>CONCLUSION</u>

The information provided in this Disclosure Statement is intended to assist you in voting on the Plan in an informed fashion. If the Plan is confirmed, you will be bound by its terms. Accordingly, you are urged to make such further inquiries as you may deem appropriate and then cast an informed vote on the Plan.

Respectfully submitted effective this 25th day of February, 2022.

**TEX-GAS HOLDINGS, LLC**

By: _____

D. Elroy Fimrite, President

Prepared by:

T. JOSH JUDD
State Bar No. 24036866
Patrick Kelly
State Bar No. 24105273
1885 Saint James Place, 15th Floor
Houston, Texas 77056
Telephone: 713.977.8686
Facsimile: 713.977.5395
ATTORNEYS FOR DEBTOR

# EXHIBIT A TO DISCLOSURE STATEMENT
# AMENDED PLAN OF REORGANIZATION

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 21-80092 (JPN) |
| TEX-GAS HOLDINGS, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

### TEX-GAS HOLDINGS, LLC'S FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION

ANDREWS MYERS, P.C.
T. JOSH JUDD
State Bar No. 24036866
PATRICK KELLY
State Bar No. 24105273
1885 Saint James Place, 15th Floor
Houston, Texas 77056
Telephone: 713.850.4200
Facsimile: 832.786.4877
Email: jjudd@andrewsmyers.com
        pkelly@andrewsmyers.com


ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 21-80092 (JPN) |
| TEX-GAS HOLDINGS, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION

The Debtor Tex-Gas Holdings, LLC (the "Debtor" or "Plan Proponent"), submits this First Amended Chapter 11 Plan of Reorganization (the "Plan") for the treatment of all outstanding creditor claims and equity interests pursuant to Chapter 11 of the Bankruptcy Code. All holders of claims against and equity interests in the Debtor are encouraged to read the Plan and accompanying Disclosure Statement in their entirety before voting on the Plan.

## ARTICLE 1
### INTRODUCTION AND GENERAL PURPOSES OF THE PLAN

The Debtor owns a single tenant industrial complex located on approximately 17 acres at 1950 FM 3057, Bay City, Texas 77414. The Plan provides for the restructuring of the existing debts such that payment to Creditors will be made by the Reorganized Debtor, or other non-debtor co-obligors, over time as follows: (1) Unless otherwise agreed, allowed Administrative Claims and Priority Non-Tax Claims will be paid in cash in full; (2) Allowed Ad Valorem Claims of Taxing Authorities will be paid in cash full, without penalty, with interest as provided in Article 4.1 of the Plan; (3) Allowed Priority Tax Claims, if any, will be paid in full within 30 days of the Effective Date with interest at the statutory rate from the Effective Date; (4) Allowed Secured Claim of the Debtor's lender will be paid by through modification and

extension of the secured first lien promissory note from the Reorganized Debtor, and other non-debtor obligors, for $4,546,999[1], with interest at the prime rate, plus 4.75%; (5) Allowed Unsecured Claims will be paid in full with interest in quarterly equal installments, unless otherwise agreed, beginning on the first day of the first month twelve months after occurrence of the Effective Date, or the date that such claims become Allowed Claims; and (6) the current equity holder will maintain its equity interest in the Reorganized Debtor.

## ARTICLE 2
DEFINITIONS

    2.1    For purposes of the Plan the following terms shall have the respective meanings specified as follows:

    2.1.1    Administrative Claim shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual, necessary costs and expenses of preserving the Debtor's estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses Allowed or awarded under Bankruptcy Code Sections 330(a) or 331, and all fees and charges assessed against the estate of the Debtor under title 28 of the United States Code.

    2.1.2    Allowed Claim or Allowed Interest shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending or as otherwise allowed under this Plan. An Allowed Claim may refer to a Secured Claim, a General Unsecured

---

[1] The exact claim amount will be determined at the Confirmation Hearing.

Claim, an Administrative Claim or a Priority Claim as the context provides.

2.1.3     <u>Avoidance Actions</u> shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for fraudulent transfer or similar legal theories.

2.1.4     <u>Bankruptcy Code</u> shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq.*, as it existed on the Filing Date.

2.1.5     <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the Southern District of Texas, Galveston Division, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

2.1.6     <u>Bankruptcy Estate</u> shall mean all of the assets owned by the Debtor and its estate.

2.1.7     <u>Bankruptcy Rules</u> shall mean the rules of procedure in bankruptcy cases applicable to cases pending before the Bankruptcy Court and local bankruptcy rules as adopted by the Bankruptcy Court.

2.1.8     <u>Bar Date</u> shall mean October 12, 2021, established by the Bankruptcy Court as the dates by which proofs of claim have to be filed.

2.1.9     <u>Cash</u> shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

2.1.10    <u>Claim</u> shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured whether or not asserted.

2.1.11    <u>Class</u> shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

2.1.12    <u>Class 1 Claims, Class 2 Claims and Class 3 Claims,</u> shall mean the Claims so classified in Section 4.

2.1.13    <u>Class 4 Interests</u> shall mean the Allowed Interests so classified in Section 4.

2.1.14 <u>Confirmation Date</u> shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

2.1.15 <u>Confirmation Hearing</u> shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

2.1.16 <u>Confirmation Order</u> shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.1.17 <u>Creditor</u> shall mean any entity holding a Claim.

2.1.18 <u>Debtor</u> shall mean Tex-Gas Holdings LLC.

2.1.19 <u>Disbursing Agent</u> shall mean the Reorganized Debtor.

2.1.20 <u>Disclosure Statement</u> shall mean the written document filed by the Debtor in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

2.1.21 <u>Disallowed Claim</u> shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

2.1.22 <u>Disputed Claim</u> shall mean that portion (including, where appropriate, the whole) of any Claim (other than an Allowed Claim) that (a) is listed in the Debtor's schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtor's schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtor's schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

2.1.23 <u>East Breifne</u> shall mean East Breifne, LLC, the holder of the Secured Promissory Note originally dated May 6, 2020, whereby the borrowers are Gate Corporation, EF Global Corporation, EFG America, LLC, and the Debtor.

2.1.24 <u>East Breifne Borrowers</u> shall mean, jointly and severally, Gate Corporation, EF Global Corporation, EFG America, LLC, and the Debtor.

2.1.25 <u>EB New Note</u> shall have the meaning provided in section 4.2.2 of the Plan.

2.1.26    <u>Effective Date</u> shall mean the date upon which the Confirmation Order becomes a Final Order.

2.1.27    <u>EFG Lease</u> shall mean that triple net lease entered into between the Debtor and EFG America LLC (as lessee) (the "Tenant") dated May 1, 2021 for the Industrial Facility.

2.1.28    <u>Equity Infusion</u> shall mean the sum of the funds contributed by EF Global Corporation in Article 6.4 and to be used for the purposes identified herein.

2.1.29    <u>Equity Interest</u> shall mean the interests represented by an "equity security" as defined in Section 101 of the Bankruptcy Code.

2.1.30    <u>Executory Contract(s)</u> shall mean any Pre-petition Unexpired lease(s) or executory contract(s) of the Debtor within the meaning of Section 365 of the Bankruptcy Code.

2.1.31    <u>Filing Date</u> shall mean June 1, 2021, the date the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

2.1.32    <u>Final Order</u> shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

2.1.33    <u>General Unsecured Claim</u> shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtor has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a Claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

2.1.34    <u>Holder</u> shall mean the owner or Holder of any Claim or Interest.

2.1.35    <u>Industrial Facility</u> shall mean the single tenant industrial facility with a total of 47,312 square feet of gross building area on 17.16 acres of land, including all site improvements, located at 1950 FM 3057, Bay City, Matagorda County, Texas 77414.

2.1.36    <u>Interest</u> shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

2.1.37    <u>Insider</u> has the definition ascribed to it under the Bankruptcy Code.

2.1.38    Lien shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

2.1.39    Non-Tax Priority Claims shall mean any Claim that is defined in Section 507(a)(2)-(7) of the Bankruptcy Code.

2.1.40    Person shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

2.1.41    Plan shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

2.1.42    Priority Tax Claims shall mean any Claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

2.1.43    Professionals shall mean all professionals employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

2.1.44    Pro-Rata shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

2.1.45    Reorganized Debtor shall mean Tex-Gas Holdings LLC, immediately after the Effective Date.

2.1.46    Secured Claim shall mean a Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

2.1.47    Substantial Consummation shall occur on the Effective Date.

2.2    Interpretation. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective sections, articles of or exhibits to the Plan, as the same may be amended, waived or modified from time to time. The headings and table of contents in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa and words denoting one gender shall include the other gender. All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

2.3    Application of Definitions and Rules of Construction Contained in the Bankruptcy Code. Words and terms defined in Section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan. The

rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

## ARTICLE 3
### ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Claims have not been classified and are treated and described in this section. The Debtor is part of a consolidated tax group and is treated as a pass through entity for income tax purposes and, as such, is not subject to income taxes. The Debtor's federal tax status as a pass through entity is based upon its legal status as a partnership. Accordingly, the Debtor has no federal income tax liability.

3.1     Administrative Claims Bar Date. Any Holder of an Administrative Claim (including any cure Claims for executory contracts or leases that are assumed pursuant to this Plan, including Lease Claims) against the Debtor, except for administrative expenses incurred in the ordinary course of operating the Debtor's business, shall file an application for payment of such Administrative Claim on or within thirty (30) days after entry of the Confirmation Order with actual service upon counsel for the Debtor, otherwise such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim, be entitled to no distribution and no further notices.  The Debtor shall pay pre-confirmation quarterly U.S. Trustee fees in full in Cash within thirty (30) days after the Effective Date. U.S. Trustee fees which accrue after confirmation shall be paid by the Reorganized Debtor.

3.2     Payment of Administrative Claims. Each Holder of an unpaid Allowed Administrative Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless the Holder of such Claim agrees to a different treatment.

3.3     Payment of Non-Tax Priority Claims. Each Holder of an unpaid Allowed Non-Tax Priority Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Non-Tax Priority Claim, unless the Holder of such Claim agrees to a different treatment. EFG America LLC is the holder of an Allowed Non-Tax Priority Claim under 507(a)(2) for unpaid expenses advanced to the Debtor for payment of legal fees allowable under 503(b)(1). By agreement with EFG America LLC, such Allowed Priority Claim shall not be paid until payment in full of the Class 1 and Class 2 Claims.

## ARTICLE 4
### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan provides for the division of Claims and Interests into Classes. Subject to all other applicable provisions of the Plan (including its distribution provisions), classified Claims and Interests shall receive the treatment set forth below. The Plan will not provide any distributions on account of a Claim or Interest to the extent that such Claim or Interest has been disallowed, released, withdrawn, waived, settled, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third party guarantors, sureties, or

insurers, whether governmental or nongovernmental. The Plan will not provide any distributions on account of a Claim or Interest, the payment of which has been assumed by a third party.

**Claims and Interests**

4.1     Class 1.     <u>Allowed Secured Claim of Property Taxing Authorities</u>.

     4.1.1     <u>Classification:</u> Class 1 consists of the Allowed Secured Claims of Ad Valorem taxing authorities for amounts that remain due and owing for 2019, 2020 and 2021 secured by a first lien on all of the Debtor's assets.

     4.1.2     <u>Treatment:</u> The EFG Lease is a triple net lease and the tenant is responsible for payment of all property taxes on the Industrial Facility:

         The Allowed Secured Class 1 Claims shall be paid in cash in full with interest at the statutory rate. The 2019 and 2020 taxes will be paid on the Effective Date of the Plan by the Debtor. The 2021 property taxes were paid when due by the Tenant. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, any and all tax liens securing the prepetition and postpetition ad valorem taxes of Matagorda County, and Bay City ISD, et. al., are retained. All post-petition ad valorem tax liabilities (tax year 2022 and subsequent tax years) owing to Matagorda County, and Bay City ISD, et. al., shall be paid in the ordinary course of business as such tax debt comes due without the need of Matagorda County, Bay City ISD, et. al., to file an administrative expense claim and/or request for payment.

     4.1.3     <u>Impairment:</u> The Class 1 Claims are unimpaired.

4.2     Class 2.     <u>Allowed Secured Claim of East Breifne</u>.

     4.2.1     <u>Classification</u>. Class 2 consists of the Allowed Secured Claim of East Breifne secured by a lien on substantially all of the Debtor's assets. The sum of all amounts to be paid to East Breifne shall be referred to as the "East Breine Allowed Claim."

     4.2.2     <u>Treatment:</u> The holder of the Class 2 Claim shall have an Allowed Secured Claim in the amount of $4,546,999[2] as of the Effective Date.

         New Loan Documents: The East Breifne Borrowers shall on the Effective Date execute an Amended and Restated Note to reflect the

---

[2] The exact amount of the East Breifne Allowed Claim shall be established at the plan confirmation hearing and identified in the Order Confirming Plan.

balance of East Breifne Allowed Claim (the "EB New Note"). The terms of the EB New Note shall provide that interest will accrue at prime rate, plus 4.75% (fixed at 8%), with equal monthly payments of interest only. The EB New Note will mature in two (2) years from the Effective Date. The EB New Note will continue to be secured by a first lien deed of trust on the Industrial Facility and related security agreements, in the form substantially similar to the pre-petition loan documents. The monthly payments will be approximately $30,313. There will be no pre-payment penalty under the EB New Note.

The East Breifne Borrowers shall be obligated, jointly and severally, under the EB New Note to begin payments on the fifth day of April 2022, and monthly interest payments each month thereafter.

4.2.3     <u>Impairment</u>:  The Class 2 Claim is impaired.

4.3     Class 3.     <u>Allowed Unsecured Claims</u>.

4.3.1     <u>Classification</u>: Class 3 consists of the Allowed Unsecured Claims.

4.3.2     <u>Treatment</u>: Unless otherwise agreed, the Holders of Allowed Unsecured Class 3 Claims shall be paid in full with interest at 5% in equal quarterly installments beginning on the later of the first day of the twelfth month from the Effective Date or the date such Claims become Allowed Claims, and continuing for 4 years thereafter.[3]

4.3.3     <u>Impairment</u>: The Class 3 Claims are unimpaired.

4.4     Class 4.     <u>Allowed Interests of Equity Holder</u>.

4.4.1     <u>Classification</u>: Class 4 consists of the Allowed Equity Interests in the Debtor.

4.4.2     <u>Treatment</u>: The Holder of Equity Interests shall retain its interests in the Reorganized Debtor but shall receive no distributions until the Class 1, 2 and 3 Allowed Claims are paid in full.

4.4.3     <u>Impairment</u>:  Class 4 is impaired under the Plan.

---

[3] By agreement, EF Global and EFG America, LLC, have agreed to defer payment on their unsecured claims until all other Allowed Class 3 Claims have been paid in full.

## ARTICLE 5
## VOTING OF CLAIMS AND INTERESTS

5.1     Class 2 is impaired and therefore is entitled to vote on this Plan. Class 4 is also impaired and entitled to vote on the Plan. Classes 1 and 3 are unimpaired and not entitled to vote. Accordingly, the acceptances of the Class 2 Claim must be solicited.

5.2     The Class 4 Equity Interest Holder is impaired and therefore are also entitled to vote.

## ARTICLE 6
## MEANS FOR EXECUTION OF PLAN

6.1     Vesting of Property of the Estate in Reorganized Debtor. On the Effective Date of the Plan, all property of the Debtor and of the Estate shall vest in the Reorganized Debtor free and clear of liens, claims and encumbrances, except as otherwise provided in the provisions of this Plan. To be clear, East Breifne and the Ad Valorem taxing authorities are retaining their liens on the Industrial Facility. All other liens (including any deeds of trust allegedly held by Fortune Insight Limited, Mrs. Yuk or Mr. Bun) against the Industrial Facility are forever barred, expunged and discharged.

6.2     Continuation of Business Operations. From and after the Effective Date of the Plan, the Reorganized Debtor is authorized to continue its normal business operations and enter into such transactions as it deems advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan. The Equity Infusions and cash flow of the operations shall be used to fund payments required by the Plan. The Financial Projections for the Reorganized Debtor are attached as Exhibit B to the Disclosure Statement.

6.3     Directors and Officers of Reorganized Debtor. D. Elroy Fimrite will continue to serve as the President of Reorganized Debtor from and after the Effective Date of the Plan. Except for reimbursement of actual expenses, Mr. Fimrite will not receive any distributions/payments from the Reorganized Debtor.

6.4     Equity Infusion. EF Global Corporation shall (i) contribute $500,000 to the Reorganized Debtor over a period of three (3) months, beginning with a $200,000 contribution on or before the Effective Date. Detail regarding the Equity Infusion, the Financial Projections and Plan Sources and Uses are attached as Exhibit B to the Disclosure Statement. In addition, to the extent necessary and required to pay any other Allowed Claims, EF Global Corporation shall contribute to the Reorganized Debtor $100,000.00, in July 2023, $100,000.00, in 2024, $100,000.00, in 2025 and $100,000.00, in 2026.

6.5     Amended Lease. On the Effective Date, the Reorganized Debtors will execute an amended and restated master lease with for the Industrial Facility. The rent under the Amended Lease is reflected on the Financial Projections and Plan Sources and Uses attached as Exhibit B to the Disclosure Statement.

6.6     The Equity Infusion and collection of rents from the Amended Lease will be used to pay Administrative and other Claims as required by the Plan.

6.7     <u>Restated Company Agreement.</u>  At the Reorganized Debtor's option, the Debtor's company agreement and articles of incorporation may be modified to prohibit the issuance of non-voting equity security to the extent required by Code § 1123(a)(6) and such other modifications as may be approved in the Confirmation Order.

6.8     <u>Disbursing Agent</u>.  The Reorganized Debtor shall act as the Disbursing Agent. If the Reorganized Debtor chooses not to act as the Disbursing Agent, then it shall designate a substitute.

6.9     <u>Exclusive Rights and Duties of the Disbursing Agent</u>. The duties of the Disbursing Agent shall be as follows:

> 6.9.1     <u>Distribution to Creditors with Administrative Claims</u>. In accordance with Article 3 the Disbursing Agent shall pay the Administrative and Priority Claims first out of Cash on hand generated from operations and then from the Equity Infusion.
>
> 6.9.2     <u>Distributions to Creditors with Allowed Claims</u>. The Disbursing Agent shall have the sole right and duty to make the distributions provided for hereunder as set forth in Article 4.

6.10     <u>Powers of the Disbursing Agent</u>.  The Disbursing Agent shall have full power and authority to do the following.

> 6.10.1     The Disbursing Agent shall be authorized to make disbursements to Administrative and Priority Creditors in accordance with Article 3 and other Creditors in accordance with Article 4.
>
> 6.10.2     The Disbursing Agent shall be authorized to file all reports required under law, including state and federal tax returns, and to pay all taxes incurred by the Bankruptcy Estate.
>
> 6.10.3     The Disbursing Agent shall be authorized to take any and all actions, including the filing or defense of any civil actions or Claim objections necessary to accomplish the above.
>
> 6.10.4     The Disbursing Agent shall be authorized to employ and pay reasonable fees and expenses of such attorneys, accountants, and other professionals, as may be deemed necessary to accomplish the above and shall be entitled to reserve sufficient Cash to pay the projected fees and costs to such Professionals on a post-confirmation basis, and shall be authorized to purchase insurance with such coverage and limits as are reasonably necessary, including covering liabilities incurred in connection with its service as Disbursing Agent.

6.10.5    The Disbursing Agent may suspend distribution to any Creditor that has not provided the Disbursing Agent with its Federal Tax Identification number or social security number, as the case may be.

6.11    <u>Treatment of Litigation Claims</u>.

On January 7, 2022, the Bankruptcy Court entered an Order Granting Debtor's Motion for Default Judgment against Fortune Insight Limited (the "Default Judgment") in the Fortune Insight Litigation. A copy of the Default Judgment is available upon request and is available for download at  https://pcl.uscourts.gov/pcl/pages/welcome.jsf, adversary no. 21-8002, docket entry 79.  The Default Judgment held, among other things, that Deed of Trust held by Fortune Insight Limited is void and expunged, that Fortune Insight Limited breached the Note, and Fortune Insight defrauded the Debtor.

The Debtor completed its discovery against the remaining defendants in the Fortune Insight Litigation. Based upon documents received and the depositions conducted, the Debtor believes that it, along with its non-debtor affiliates, have causes of action against Paul Heffner (and his estate) and Net Effect Limited. The Debtor, and its non-debtor affiliates, intend to pursue such causes of action against Mr. Heffner's estate and Net Effect Limited in a court of competent jurisdiction. The Debtor (and the Reorganized Debtor, as applicable), specifically preserve all causes of action related to Mr. Heffner and Net Effect Limited, including in their dealings with Lui So Yuk and Sham Wai Bun, and resulting wrongful attempts to pledge collateral.

On February 17-18, the Bankruptcy Court conducted a consolidated trial on the merits in Adversary Proceeding 21-8002 and the Debtor's Objections to the Proofs of Claims filed by Yuk and Bun. On February 25, 2022, the Bankruptcy Court issued a revised memorandum opinion and corresponding judgment (collectively, the "Judgment"). The Judgment provides that Deed of Trust recorded at Document Number 3870 as recorded in the Official Records of Matagorda County, Texas on July 21, 2020, is not an enforceable lien interest against the debtor's real property described as 17.16 acres of land and improvements located at 1950 FM 3057, Bay City, Matagorda County, Texas 77414 and is extinguished. In addition, the Judgment provides that Claims Nos. 3-1 and 4-1 shall be disallowed as secured claims but allowed as unsecured claims in the amounts of $267,320.00 for Sham Wai Bun and $400,980.00 for Lui So Yuk.

6.12    <u>Presumption of Disbursing Agent's Authority</u>.  In no case shall any party dealing with the Disbursing Agent in any manner whatsoever be obligated to see that the terms of its engagement have been complied with, or be obligated or privileged to inquire into the necessity or expediency of any act of the Disbursing Agent, or to inquire into any other limitation or restriction of the power and authority of the Disbursing Agent, but as to any party dealing with the Disbursing Agent in any manner whatsoever in relation to the assets, the power of the Disbursing Agent to act or otherwise deal with said property shall be absolute except as provided under the terms of the Plan.

6.13    <u>Limitation on Disbursing Agent's Liability</u>.

6.13.1 Except gross negligence or willful misconduct, no recourse shall ever be had directly or indirectly against the Disbursing Agent personally or against any employee of the Disbursing Agent by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Disbursing Agent pursuant to this Plan, or by reason of the creation of any indebtedness by the Disbursing Agent for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants and agreements of the Disbursing Agent or any such employee, whether in writing or otherwise shall be enforceable only against and be satisfied only out of the assets of the Bankruptcy Estate and every undertaking, contract, covenant or agreement entered into in writing by the Disbursing Agent shall provide expressly against the personal liability of the Disbursing Agent.

6.13.2 The Disbursing Agent shall not be liable for any act the Disbursing Agent may do or omit to do as Disbursing Agent hereunder while acting in good faith and in the exercise of the best judgment of the Disbursing Agent and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Disbursing Agent, shall be evidence of such good faith and best judgment; nor shall the Disbursing Agent be liable in any event except for gross negligence or willful default or misconduct of the Disbursing Agent.

6.14 <u>Establishment and Maintenance of Disputed Claims Reserve</u>:

6.14.1 Distributions made in respect of any Disputed Claims shall not be distributed, but shall instead be deposited by the Disbursing Agent into an interest-bearing account styled "Disputed Claims Reserve". The funds in this account shall be held in trust for the benefit of the Holders of all Disputed Claims.

6.14.2 Unless and until the Bankruptcy Court shall determine that a good and sufficient reserve for any Disputed Claim is less than the full amount thereof, the calculations required by the Plan to determine the amount of the distributions due to the Holders of Allowed Claims and to be reserved for Disputed Claims shall be made as if all Disputed Claims were Allowed Claims in the full amount claimed by the Holders thereof. No payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

6.14.3 At such time as a Disputed Claim becomes an Allowed Claim the distributions due on account of such Allowed Claim and accumulated by the Debtor (including the <u>Pro Rata</u> share of any dividends or

interest earned in respect of such distributions) shall be released from the account and paid by the Debtor to the Holder of such Allowed Claim.

6.14.4     At such time as any Disputed Claim is finally determined not to be an Allowed Claim, the amount on reserve in respect thereof shall be released from the account and returned to Debtor.

6.14.5     The Disbursing Agent shall not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been Disallowed by a Final Order of the Bankruptcy Court as of any applicable time for distribution under the Plan, unless the Bankruptcy Court orders otherwise or unless the Court's order of disallowance has been stayed.

6.15    <u>Delivery of Distributions</u>. Subject to Bankruptcy Rule 9010 and the provisions of the Plan, distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such a Holder if no proof of Claim or proof of Equity Interest is filed or if the Disbursing Agent has been notified in writing of a change of address), except as provided below.  If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Disbursing Agent until such distributions are claimed.

6.16    <u>Time Bar for Cash Payments</u>. Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date or (b) ninety (90) days after the date of reissuance of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

6.17    <u>Unclaimed Property</u>. If any Person entitled to receive distributions under the Plan cannot be located within a reasonable period of time after the Effective Date, the distributions such Person would be entitled to receive shall be held by the Disbursing Agent in a segregated interest-bearing account.  If the Person entitled to any such distributions is located within six months after the Effective Date, such distributions, together with any dividends and interest earned thereon, shall be paid and distributed to such Person.  If such Person cannot be located within such period, such distributions and any dividends and interest thereof shall be returned to the respective Debtor and such Person shall have waived and forfeited his right to such distributions.  Nothing contained in this Plan shall require the Debtor or the Disbursing Agent to attempt to locate such Person. It is the obligation of each Person claiming rights under the Plan to keep the Debtor and/or the Disbursing Agent advised of current address by sending written notice of any changes to the Debtor and/or the Disbursing Agent.

6.18   <u>Fractional Dollars</u>.  Any other provision of the Plan notwithstanding, no payments of fractional dollars will be made to any Holder of an Allowed Claim.  Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

6.19   <u>Minimum Payment</u>. The minimum amount of any distribution shall be $25. If a payment is due in an amount less than $25, then such payments is hereby waived and the funds shall be retained by the Reorganized Debtor.

6.20   <u>Distribution Dates</u>. Whenever any distribution to be made under the Plan is due on a day other than a Business Day, such distribution will instead be made, without penalty or interest, on the next Business Day. The Bankruptcy Court shall retain power, after the Confirmation Date, to extend distribution dates for cause, upon motion and after notice and a hearing (as defined in Bankruptcy Code Section 102) to affected parties.

6.21   <u>Orders Respecting Claims Distribution</u>. After confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to enter orders in aid of consummation of the Plan respecting distributions under the Plan and to resolve any disputes concerning distributions under the Plan.

6.22   <u>Avoidance Actions</u>. The Reorganized Debtor retains any Avoidance Actions and is authorized, but not required, to prosecute them after the Confirmation Date.  The Net Proceeds of Avoidance Actions will be distributed to Holders of Allowed Class 4 Claims (as set forth above), but compromises of Avoidance Actions may also benefit the Reorganized Debtor or Debtor or Holders of Claims of other Classes. The Debtor does not anticipate filing any Avoidance Actions.

6.23   <u>Agreements, Instruments and Documents</u>. All agreements, instruments and documents required under the Plan to be executed or implemented, together with such others as may be necessary, useful, or appropriate in order to effectuate the Plan shall be executed on or before the Effective Date or as soon thereafter as is practicable.

6.24   <u>Further Authorization</u>. The Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings from the Bankruptcy Court, in addition to those specifically listed in the Plan, as may be necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan. The Bankruptcy Court shall retain jurisdiction to enter such orders, judgments, injunctions and rulings.

**ARTICLE 7**
<u>CRAMDOWN AND CLAIMS ALLOWANCE</u>

7.1   In the event any Class rejects the Plan, the Debtor will seek to invoke the provisions of Section 1129(b) of the Bankruptcy Code and confirm the Plan notwithstanding the rejection of the Plan by any Class of Claims or Interests.

**IN THE EVENT ANY CLASS REJECTS THE PLAN THE DEBTOR WILL SEEK TO INVOKE THE PROVISIONS OF 11 U.S.C. §1129(b) AND**

**CONFIRM THE PLAN OVER THE REJECTION OF THE CLASS OR CLASSES. THE TREATMENT AFFORDED EACH CREDITOR IN EACH CLASS IN THE EVENT OF A CRAMDOWN WILL BE THE SAME AS THAT PROVIDED FOR IN THE PLAN AS THE CASE MAY BE.**

7.2     <u>Allowance of Claims under the Plan</u>. Allowance is a procedure whereby the Bankruptcy Court determines the amount and enforceability of Claims against the Debtor, if the parties cannot agree upon such allowance. It is expected that the Debtor and/or the Disbursing Agent will file objections to Claims of Creditors, if any are deemed necessary, before and after confirmation of the Plan. The Plan merely provides for payment of Allowed Claims, but does not attempt to pre-approve the allowance of any Claims.

7.3     <u>Objection Deadline</u>. As soon as practicable, but in no event later than one hundred eighty (180) days after the Effective Date, unless extended by order of the Bankruptcy Court for cause, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made.

7.4     <u>Prosecution of Objections</u>. On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all objections to Claim may be made by the Debtor and/or Disbursing Agents.

## ARTICLE 8
<u>DEFAULT</u>

8.1     If any of the following events occur, the Debtor will be in breach of this Plan ("Default"):

       8.1.1     Failure to pay any amount due under the Plan when due; or

       8.1.2     Breach or violation of a material covenant or uncured default under the Plan, including failure to pay amounts due.

8.2     Should the Debtor be in breach or violation under the foregoing paragraph, or Default has occurred and thereafter the Debtor fails to remedy or resolve such breach within thirty (30) days from the date of receipt of written notice of such breach, violation or default, then any Creditor owed a distribution, which the Debtor fails to make when due, at its option, may declare that the Debtor is in default of this Plan.

## ARTICLE 9
<u>EXECUTORY CONTRACTS AND LEASES</u>

9.1     The Debtor hereby assumes the executory contracts and leases set forth in Exhibit A.

9.2     The Debtor hereby rejects all executory contracts and leases listed as "reject" in Exhibit A.

9.3     Any Claims arising from rejection of an executory contract or lease must be filed on or before 20 days from the Effective Date. Otherwise, such Claims are forever barred and will not be entitled to share in any distribution under the Plan. Any Claims arising from rejection, if timely filed and allowed, will be paid as General Unsecured Claims.

9.4     The Debtor does not believe there are any cure amounts due on any lease being assumed by the Debtor.  To the extent there are cure amounts owed and an Administrative Claim is filed, such claims shall be paid when and if allowed by Final Order of the Bankruptcy Court.

**ARTICLE 10**
**MODIFICATION OF THE PLAN**

10.1     The Debtor may propose amendments and modifications of this Plan through the Confirmation Date with leave of the Bankruptcy Court upon appropriate notice. After the Confirmation Date, the Reorganized Debtor may, with approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the intent of this Plan. After the Confirmation Date, the Debtor may, with approval of the Bankruptcy Court, modify the Plan as to any Class, even though such modification materially affects the rights of the Creditors or Interest Holders in such Class; provided, however, that such modifications must be accepted as to Classes of Creditors by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting in each such Class and fifty-one percent (51%) in number of Allowed Claims voting in such Class, and as to Classes of Interest Holders by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Interests voting in each such Class; and provided, further, that additional disclosure material needed to support such modification shall be approved by the Bankruptcy Court in the manner consistent with Section 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure. With respect to all proposed modifications to the Plan both before and after confirmation, the Debtor shall comply with the requirements of Section 1127 of the Bankruptcy Code.

**ARTICLE 11**
**CONDITIONS PRECEDENT**

11.1     Conditions to Confirmation. Confirmation of the Plan shall not occur and the Bankruptcy Court shall not enter the Confirmation Order unless all of the requirements of the Bankruptcy Code for confirmation of the Plan with respect to the Debtor shall have been satisfied.  In addition, confirmation shall not occur, the Plan shall be null and void and of no force and effect, and the Plan shall be deemed withdrawn unless the Court shall have entered all orders (which may be orders included within the Confirmation Order) required to implement the Plan.

11.2     Waiver and Nonfulfillment of Conditions to Confirmation. Nonfulfillment of any condition to confirmation of the Plan may be waived only by the Debtor.  In the event the Debtor determines that the conditions to the Plan's confirmation which they may waive cannot be satisfied and should not, in their discretion, be waived, the Debtor may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

11.3    Confirmation Order Provisions for Pre-Effective Date Actions. The Confirmation Order shall empower and authorize the Debtor to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable it to implement the provisions of the Plan and satisfy all other conditions precedent to the effectiveness of the Plan.

11.4    Conditions to the Effective Date. The following are conditions precedent to the effectiveness of the Plan:  (i) the Plan is confirmed and the Bankruptcy Court shall have entered the Confirmation Order, which shall have become a Final Order; (ii) Debtor does not withdraw the Plan at any time prior to the Effective Date; and (iii) the Reorganized Debtor shall have sufficient Cash on hand to make the initial payments and distributions required under the Plan.

11.5    Waiver and Nonfulfillment of Conditions to Effective Date. Nonfulfillment of any condition set forth in the immediately foregoing paragraph of the Plan may be waived only by the Plan Proponents.  In the event that the Plan Proponents determine that the conditions to the Plan's Effective Date set forth in the immediately foregoing paragraph of this Plan cannot be satisfied and should not, in their sole discretion, be waived, the Plan Proponents may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

**ARTICLE 12**
**JURISDICTION OF THE BANKRUPTCY COURT**

12.1    Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Bankruptcy Court shall retain exclusive jurisdiction of this case after the Confirmation Date with respect to the following matters:

12.1.1    To allow, disallow, reconsider (subject to Bankruptcy Code Section 502(j) and the applicable Bankruptcy Rules) Claims and to hear and determine any controversies pertaining thereto;

12.1.2    To estimate, liquidate, classify or determine any Claim against the Debtor, including claims for compensation or reimbursement;

12.1.3    To resolve controversies and disputes regarding the interpretation and implementation of the Plan, including entering orders to aid, interpret or enforce the Plan and to protect the Debtor and any other entity having rights under the Plan as may be necessary to implement the Plan;

12.1.4    To hear and determine any and all applications, contested matters, or adversary proceedings arising out of or related to this Plan or this case or as otherwise might be maintainable under the applicable jurisdictional scheme of the Bankruptcy Code prior to or after confirmation and consummation of the Plan whether or not pending on the Confirmation Date;

12.1.5    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

12.1.6   To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

12.1.7   To adjudicate all Claims to any lien on any of the Debtor's assets;

12.1.8   To hear and determine matters concerning state, local and federal taxes pursuant to the Bankruptcy Code, including (but not limited to) sections 346, 505 and 1146 thereof and to enter any order pursuant to Bankruptcy Code Section 505 or otherwise to determine any tax of the Debtor, whether before or after confirmation, including to determine any and all tax effects of the Plan;

12.1.9   To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan or to modify the Plan as provided by applicable law;

12.1.10   To determine all questions and disputes regarding title to assets and shares of the Debtor, Reorganized Debtor or of the Bankruptcy Estate, as may be necessary to implement the Plan;

12.1.11   To enforce and to determine actions and disputes concerning the releases contemplated by the Plan and to require persons holding Claims being released to release Claims in compliance with the Plan;

12.1.12   To fix the value of collateral in connection with determining Claims;

12.1.13   To enter a final decree closing the case and making such final administrative provisions for the case as may be necessary or appropriate.

12.1.14   To, (even after entry of a final decree), hear any cases enforcing Bankruptcy Code section 525.

12.2   <u>Failure of the Bankruptcy Court to Exercise Jurisdiction</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Chapter 11 case, including the matters set forth in Section 12.1 of the Plan, this Article 12 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**ARTICLE 13**
<u>EFFECT OF CONFIRMATION</u>

13.1   <u>Binding Effect</u>. As provided for in Section 1141(d) of the Bankruptcy Code, the provisions of the Plan shall bind the Debtor, any entity acquiring property under the Plan and any Creditor, Equity Holder of the Debtor, whether or not the Claim or Interest of such Creditor or

Equity Holder is impaired under the Plan and whether or not such Creditor or Equity Holder has accepted the Plan, and the United States and any licensing authority.  After confirmation, the property dealt with by the Plan shall be free and clear of all Claims and Interests of Creditors and Equity Holders, except to the extent as provided for in the Plan as the case may be.  The Confirmation Order shall contain an appropriate provision to effectuate the terms of this paragraph 13.1.

    13.2   <u>Satisfaction of Claims and Interests</u>. Holders of Claims and Interests shall receive the distributions provided for in this Plan, if any, in full settlement and satisfaction of all such Claims, and any interest accrued thereon, and all such Interests.

    13.3   <u>Vesting of Property</u>. Except as otherwise expressly provided in the Plan or the Confirmation Order, pursuant to Section 1141(b) of the Bankruptcy Code, upon the Effective Date, all Property of the Bankruptcy Estate shall vest in the Debtor free and clear of all Claims, liens, encumbrances, charges or other Interests of Creditors and Interest Holders. Except as otherwise expressly provided in the Plan or the Confirmation Order, all assets of the Bankruptcy Estate shall vest in the Reorganized Debtor free and clear of all Claims, liens, and encumbrances. For the avoidance of doubt, the Industrial Facility shall vest in the Reorganized Debtor free and clear of all liens, Claims and, encumbrances or charges of the Defendants in the Fortune Insight Litigation. Moreover, all licenses and permits held by the Debtor shall be held by the Reorganized Debtor.  All licenses or permits held by the Debtor or the Bankruptcy Estate will be retained by the Reorganized Debtor.  Debtor is authorized to file, register or otherwise record a certified copy of the Confirmation Order with any governmental office or agency, which shall constitute conclusive evidence of the release of all liens, claims or interest of any kind whatsoever contained in the Deed of Trust filed in Matagorda County, Texas, on July 21, 2021 ("Fortune Insight Deed of Trust"). Each state and local governmental agency is hereby directed to accept, file, register or record the Confirmation Order to reflect the release and extinguishment of the Fortune Insight Deed of Trust.

    13.4   <u>Discharge</u>. Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, the Debtor shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan.

    13.5   **<u>Injunction</u>.  <u>The Confirmation Order shall include a permanent injunction prohibiting the collection of Claims in any manner other than as provided for in the Plan. All Holders of Claims shall be prohibited from asserting against the Debtor, Reorganized Debtor, or Insider Released Party (defined *infra*) or any of their assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such Holder filed a proof of Claim.  Such prohibition shall apply whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of a Claim based upon such debt has accepted the Plan. This injunction also</u>**

**permits the Reorganized Debtor to enforce 11 U.S.C. §525(a) upon improper revocation or restriction of licenses.  The injunction shall extend up through September 2026.**

13.6    <u>Preservation of Setoff Rights</u>. In the event that the Debtor has a Claim of any nature whatsoever against the Holders of Claims, the Debtor may, but is not required to setoff against the Claim (and any payments or other distributions to be made in respect of such Claim hereunder), subject to the provisions of Section 553 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any Claim that the Debtors has against the Holder of Claims. Neither this provision nor the injunctive provision of the Confirmation Order shall impair the existence of any right of setoff or recoupment that may be held by a Creditor herein; provided that the exercise of such right shall not be permitted unless the Creditor provides the Debtor with written notice of the intent to affect such setoff or recoupment. If the Debtor or the Disbursing Agent, as applicable, objects in writing within twenty (20) business days following the receipt of such notice, such exercise shall only be allowed upon order of the Bankruptcy Court. In the absence of timely objection, the Creditor may implement the proposed setoff or recoupment against the Claim held by the Bankruptcy Estate.

13.7    **<u>Releases</u>.  On the Effective Date and pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code, the Debtor, and to the maximum extent provided by law, its agents, release and forever discharge all claims, including acts taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into or any other act taken or entitled to be taken in connection with the Plan or this case against the following, whether known or unknown:**

13.7.1    **D. Elroy Fimrite ("Insider Released Party"), in connection with any and all claims and causes of action arising on or before the Confirmation Date that may be asserted by or on behalf of the Debtor or the Bankruptcy Estate and/or on account of the Debtor's Case.**

13.7.2    **The release of these Insider Released Party shall be conditioned upon the occurrence of the Effective Date.**

13.7.3    **The Debtor's Professionals will be released from any and all claims and liabilities other than willful misconduct or if the release is otherwise restricted by the Texas Disciplinary Rules of Professional Conduct.**

13.8    <u>Guarantors</u>.  There are no third party releases of any guarantors of any of the Debtor's liabilities in the Plan.

13.9    <u>Lawsuits</u>.  On the Effective Date, all lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of Claims against the Debtor and any Guarantor except proof of Claim and/or objections thereto pending in

the Bankruptcy Court shall be dismissed as to the Debtor. Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan. All parties to any such action shall be enjoined by the Bankruptcy Court by the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions. All lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a claim(s) by the Debtor or any entity proceeding in the name of or for the benefit of the Debtor against a person shall remain in place only with respect to the claim(s) asserted by the Debtor or such other entity, and shall become property of the Post-Confirmation Reorganized Debtor to prosecute, settle or dismiss as it sees fit.

13.10   <u>Insurance</u>. Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor or Reorganized Debtor in which the Debtor or any of the Debtor's representatives or agents is or was the insured party; the Reorganized Debtor shall become the insured party under any such policies without the need of further documentation other than the Plan and entry of the Confirmation Order.  Each insurance company is prohibited from denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtor's bankruptcy, the Plan or any provision within the Plan.

13.11   <u>U.S. Trustee Fees</u>. The Debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismisses the case. After confirmation, the Reorganized Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements made by the Debtor for each month or portion thereof that this Chapter 11 case remains open in a format prescribed by the United States Trustee.

13.12   <u>Term of Stays</u>.  Except as otherwise provided in the Plan, the stay provided for in this case pursuant to Bankruptcy Code Section 362 shall remain in full force and effect until the Effective Date.

### ARTICLE 14
### MISCELLANEOUS PROVISIONS

14.1   <u>Corporate Authority</u>. All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further board or general partner resolutions, approval, notice or meetings, other than the notice provided by serving this Plan on all known Creditors of the Debtor, all Interest Holders, and all current directors of the Debtor.

14.2   <u>Documentation</u>. The Debtor, all Creditors and other parties in interest required to execute releases, termination statements, deeds, bills of sale or other documents required by the Plan, shall be ordered and directed to execute such documents as are necessary in order to effectuate the terms of this Plan. The Bankruptcy Court may determine that the failure of any party to execute a required document shall constitute contempt of the Bankruptcy Court's Confirmation Order, which shall require such documents to be executed in accordance with the terms of the Plan and the Confirmation Order. On the Effective Date, all documents and instruments contemplated by the Plan not requiring execution and delivery prior to the

Confirmation Date shall be executed and delivered by the Debtor, and Creditors, as the case may be.  All Documents shall be consistent with the terms of the Plan and shall otherwise be subject to approval as to form by all respective counsel.

       14.3   <u>Integration Clause</u>. This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor, Creditors, Equity Interests and the parties-in-interest upon the matters herein. Parol evidence shall not be admissible in an action regarding this Plan or any of its provisions.

       14.4   <u>Primacy of the Plan and Confirmation Order</u>. To the extent of any conflict or inconsistency between the provisions of the Plan on the one hand, and the Confirmation Order on the other hand, the provisions of the Confirmation Order shall govern and control.

       14.5   <u>Severability</u>. Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the proponent may modify the Plan in accordance with Article 11 hereof so that such provision shall not be applicable to the Holder of any Claim or Equity Interests. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

       14.6   <u>No Admission</u>. Neither the filing of the Plan, nor Disclosure Statement, nor any statement or provision contained herein, nor the taking by the Debtor of any action with respect to the Plan shall (i) be or be deemed to be an admission against interest and (ii) until the Effective Date, be or be deemed to be a waiver of any rights which the Debtor may possess against any other party. In the event that the Effective Date does not occur, neither the Plan, Disclosure Statement nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Debtor's case.

       14.7   <u>Bankruptcy Restrictions</u>. From and after the Effective Date, the Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g., section 363, section 364, rule 9019), the Bankruptcy Court, or the United States Trustee's guidelines. The Disbursing Agent may, on behalf of the Debtor, compromise Claims and/or controversies post-Effective Date without the need of notice or Bankruptcy Court approval. No monthly operating reports will be filed after the Effective Date; however, the Disbursing Agent shall provide the U.S. Trustee such financial reports as provided above and as the U.S. Trustee may reasonably request until the entry of a final decree.

       14.8   <u>Governing Law</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or the law of the jurisdiction of organization of any entity, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 case, including the documents executed pursuant to the Plan.

       14.9   <u>Closing of Case</u>. As soon as the Debtor has performed its obligations under the Plan it shall seek the entry of an Order of the Court closing the case.

14.10   <u>Successors and Assigns</u>. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

14.11   <u>Notices</u>. All notices or requests in connection with the Plan shall be in writing and given by mail addressed to:

> Tex-Gas Holdings LLC
> c/o D. Elroy Fimrite
> 1045 E. McKellips Road
> Mesa, Arizona 85203

with copies to:

> T. Josh Judd
> Patrick Kelly
> Andrews Myer, P.C.
> 1885 Saint James Place, 15th Floor
> Houston, Texas 77056

All notices and requests to Persons holding any Claim or Interest in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the case.  Any such holder of Claim or Interest may designate in writing any other address for purposes of this section, which designation will be effective upon receipt by the Debtor.

14.12   <u>Validity and Enforceability</u>. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Should any provision in this Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

Respectfully submitted effective this  25th day of February, 2022.

[SIGNATURE PAGE TO FOLLOW]

**TEX-GAS HOLDINGS LLC**

By: _____

D. Elroy Fimrite, President

T. JOSH JUDD
State Bar No. 24036866
Patrick Kelly
State Bar No. 24105273
1885 Saint James Place, 15th Floor
Houston, Texas 77056
Telephone: 713.850.4200
Facsimile:  832.786.4877
Email: jjudd@andrewsmyers.com
pkelly@andrewsmyers.com

ATTORNEYS FOR DEBTOR

EXHIBIT A – ASSUMED LEASES AND EXECUTORY CONTRACTS

Counterparty                                          Cure Amount

1.  EFG Lease. / Assumed                              N/A

2.                                                    N/A

# EXHIBIT B TO DISCLOSURE STATEMENT
## FINANCIAL PROJECTIONS

PROJECTIONS / SOURCES USES

EXHIBIT "B"

| | 22-Mar | 22-Apr | 22-May | 22-Jun | 22-Jul | 22-Aug | 22-Sep | 22-Oct | 22-Nov |
|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | - | 107,500 | 57,187 | 97,187 | 96,874 | 96,561 | 96,248 | 95,935 | 95,622 |
| Equity Contribution | 200,000 | | 300,000 | | | | | | |
| INCOME | | | | | | | | | |
| Rent | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| | | | | | | | | | |
| TOTAL INCOME | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| | | | | | | | | | |
| EXPENSES | | | | | | | | | |
| Operating Expenses | | | | | | | | | |
| Property Taxes* | | | | | | | | | |
| Insurance* | | | | | | | | | |
| | | | | | | | | | |
| TOTAL EXPENSES | - | - | - | - | - | - | - | - | |
| | | | | | | | | | |
| Net Cash Flow (before debt service) | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| Debt Service | | | | | | | | | |
| PLAN PAYMENTS | | | | | | | | | |
| Administrative Claims | | | | | | | | | |
| Andrews Myers (estimate) | 30,000 | 50,000 | 50,000 | | | | | | |
| EFG America LLC** | | | | | | | | | |
| | | | | | | | | | |
| Class 1 - Property Taxes | 92,500 | | | | | | | | |
| Class 2 - East Breifne*** | | 30,313 | 240,000 | 30,313 | 30,313 | 30,313 | 30,313 | 30,313 | 30,313 |
| Class 3 - General Unsecured**** | | | | | | | | | |
| Class 4 - Equity | - | - | - | - | - | - | - | - | - |
| Total Plan Payments | 122,500 | 80,313 | 290,000 | 30,313 | 30,313 | 30,313 | 30,313 | 30,313 | 30,313 |
| | | | | | | | | | |
| ENDING CASH | 107,500 | 57,187 | 97,187 | 96,874 | 96,561 | 96,248 | 95,935 | 95,622 | 95,309 |

* Paid by tenant per terms of triple net lease.

** $90,000 accrued priority claim per orders authorizing replenishment of retainers.

***EB New Note matures at the end of 24 months

**** Represents combined claims of Yuk & Bun per terms of judgment, with interest.

***** The Debtor expects that the retirement of the East Breifne debt will require refinancing of the property and that the monthly mortgage payment will be approximately $25,000 per month.

PROJECTIONS / SOURCES USES

**EXHIBIT "B"**

| | 22-Dec | 23-Jan | 23-Feb | 23-Mar | 23-Apr | 23-May | 23-Jun | 23-Jul | 23-Aug |
|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 95,309 | 94,996 | 94,683 | 94,370 | 94,057 | 45,082 | 47,769 | 50,456 | 104,481 |
| Equity Contribution | | | | - | | | | 100,000 | |
| INCOME | | | | | | | | | |
| Rent | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 33,000 | 33,000 | 33,000 | 33,000 |
| | | | | | | | | | |
| TOTAL INCOME | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 33,000 | 33,000 | 33,000 | 33,000 |
| | | | | | | | | | |
| EXPENSES | | | | | | | | | |
| Operating Expenses | | | | | | | | | |
| Property Taxes* | | | | | | | | | |
| Insurance* | | | | | | | | | |
| | | | | | | | | | |
| TOTAL EXPENSES | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | |
| Net Cash Flow (before debt service) | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 33,000 | 33,000 | 33,000 | 33,000 |
| Debt Service | | | | | | | | | |
| PLAN PAYMENTS | | | | | | | | | |
| Administrative Claims | | | | | | | | | |
| Andrews Myers (estimate) | | | | | | | | | |
| EFG America LLC** | | | | | | | | | |
| | | | | | | | | | |
| Class 1 - Property Taxes | | | | | | | | | |
| Class 2 - East Breifne*** | 30,313 | 30,313 | 30,313 | 30,313 | 30,313 | 30,313 | 30,313 | 30,313 | 30,313 |
| Class 3 - General Unsecured**** | | | | | 48,662 | | | 48,662 | |
| Class 4 - Equity | - | - | | - | | | | | |
| Total Plan Payments | 30,313 | 30,313 | 30,313 | 30,313 | 78,975 | 30,313 | 30,313 | 78,975 | 30,313 |
| | | | | | | | | | |
| ENDING CASH | 94,996 | 94,683 | 94,370 | 94,057 | 45,082 | 47,769 | 50,456 | 104,481 | 107,168 |

* Paid by tenant per terms of triple net le

** $90,000 accrued priority claim per or

***EB New Note matures at the end of 2

**** Represents combined claims of Yuk

***** The Debtor expects that the retire

will be approximately $25,000 per mont

EX - GAS HOLDINGS LLC
PROJECTIONS / SOURCES USES

**EXHIBIT "B"**

| | 23-Sep | 23-Oct | 23-Nov | 23-Dec | 2024 | 2025 | 2026 | Jan-Mar 27 |
|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 107,168 | 109,855 | 63,880 | 66,567 | 69,254 | 54,667 | 56,019 | 57,371 |
| Equity Contribution | | | | | 100,000 | 100,000 | 100,000 | 57,371 |
| INCOME | | | | | | | | |
| Rent | 33,000 | 33,000 | 33,000 | 33,000 | 396,000 | 396,000 | 396,000 | 99,000 |
| | | | | | | | | |
| TOTAL INCOME | 33,000 | 33,000 | 33,000 | 33,000 | 396,000 | 396,000 | 396,000 | 99,000 |
| | | | | | | | | |
| EXPENSES | | | | | | | | |
| Operating Expenses | | | | | | | | |
| Property Taxes* | | | | | | | | |
| Insurance* | | | | | | | | |
| | | | | | | | | |
| TOTAL EXPENSES | - | - | - | - | - | - | | |
| | | | | | | | | |
| Net Cash Flow (before debt service) | 33,000 | 33,000 | 33,000 | 33,000 | 396,000 | 396,000 | 396,000 | 99,000 |
| Debt Service | | | | | 225,000 | 300,000 | 300,000 | 75,000 |
| PLAN PAYMENTS | | | | | | | | |
| Administrative Claims | | | | | | | | |
| Andrews Myers (estimate) | | | | | | | | |
| EFG America LLC** | | | | | | | | |
| | | | | | | | | |
| Class 1 - Property Taxes | | | | | | - | | |
| Class 2 - East Breifne*** | 30,313 | 30,313 | 30,313 | 30,313 | 90,939 | | | |
| Class 3 - General Unsecured**** | | 48,662 | | | 194,648 | 194,648 | 194,648 | 48,662 |
| Class 4 - Equity | | | | | | | | |
| Total Plan Payments | 30,313 | 78,975 | 30,313 | 30,313 | 285,587 | 194,648 | 194,648 | 48,662 |
| | | | | | | | | |
| **ENDING CASH** | **109,855** | **63,880** | **66,567** | **69,254** | **54,667** | **56,019** | **57,371** | **90,080** |

\* Paid by tenant per terms of triple net le

\*\* $90,000 accrued priority claim per ord

\*\*\*EB New Note matures at the end of 2

\*\*\*\* Represents combined claims of Yuk

\*\*\*\*\* The Debtor expects that the retire

will be approximately $25,000 per mont

# EXHIBIT C TO DISCLOSURE STATEMENT
# LIQUIDATION ANALYSIS

EXHIBIT C- LIQUIDATION ANALYSIS

| Assets: | FMV (high) | Book Value | Appraised Value (MCAD) | May 2020 Transaction | Replacement Cost Per 2021 Insurance Report*** | Liquidation Value |
|---|---|---|---|---|---|---|
| Cash | | | | | | - |
| Industrial Facility** | 7,911,000.00 | 4,125,000.00 | 944,710.00 | 1,600,000.00 | 3,729,163.00 | |
| Avoidable transfers | - | | | | | - |
| Estimated Fair Marke Value (replacement) | 3,729,163.00 | | | | | 2,610,414.10 |
| Estimated Fair Market Value (high) | 7,911,000.00 | | | | | 5,537,700.00 |
| Estimated Fair Market Value (mid)* | 1,600,000.00 | | | | | 1,120,000.00 |
| Estimated Fair Market Value (low) | 944,710.00 | | | | | 661,297.00 |

| Creditor Payout according to Priority under 507 | REPLACEMENT | Claim Amount | Amount Paid | Percentage Recovery |
|---|---|---|---|---|
| Chapter 7 Administrative Costs**** | | 136,562 | 136,562 | 100% |
| Realtor's commission @ 5% | | 130,521 | 130,521 | 100% |
| Chapter 11 Administrative Costs***** | | 180,000 | | 0% |
| Class 1 (Secured Tax Claims)^ | | 92,500 | 92,500 | 100% |
| Class 2 (Secured Claim) | | 4,546,999 | 2,250,831 | 50% |
| Class 3 (Unsecured Claims) | | 688,973 | - | 0% |
| Equity Holders | | | - | 0% |
| Total Paid | | | 2,610,414 | |
| | HIGH | | | |
| Chapter 7 Administrative Costs**** | | 224,381 | 224,381 | 100% |
| Realtor's commission @ 5% | | 276,885 | 276,885 | 100% |
| Chapter 11 Administrative Costs***** | | 180,000 | 120,000 | 0% |
| Class 1 (Secured Tax Claims) | | 92,500 | 92,500 | 100% |
| Class 2 (Secured Claim) | | 4,546,999 | 4,280,000 | 94% |
| Class 3 (Unsecured Claims) | | 688,973 | 543,934 | 79% |
| Equity Holders | | | - | 0% |
| Total Paid | | | 5,537,700 | |

EXHIBIT C- LIQUIDATION ANALYSIS

### LOW

| | | | |
|---|---|---|---|
| Chapter 7 Administrative Costs**** | 71,314 | 71,314 | 100% |
| Realtor's commission @ 5% | 33,065 | 33,065 | 100% |
| Chapter 11 Administrative Costs***** | 180,000 | - | 0% |
| Class 1 (Secured Tax Claims) | 92,500 | 92,500 | 100% |
| Class 2 (Secured Claim) | 4,546,999 | 464,418 | 10% |
| Class 3 (Unsecured Claims) | 688,973 | - | 0% |
| Equity Holders | | - | 0% |
| Total Paid | | 661,297 | |

### MID

| | | | |
|---|---|---|---|
| Chapter 7 Administrative Costs**** | 91,850 | 91,850 | 100% |
| Realtor's commission @ 5% | 56,000 | 56,000 | 100% |
| Chapter 11 Administrative Costs***** | 180,000 | - | 0% |
| Class 1 (Secured Tax Claims) | 92,500 | 92,500 | 100% |
| Class 2 (Secured Claim) | 4,546,999 | 879,650 | 19% |
| Class 3 (Unsecured Claims) | 688,973 | - | 0% |
| Equity Holders | | - | |
| Total Paid | | 1,120,000.00 | |

* Based upon May 2020 transaction where prior lien/deed of trust holder accepted $1.6 million in satisfaction of secured $8.1 note claims

^Includes Bay City ISD claim of $16,350 that was not included in description in Disclosure Statement

** Includes land, buidings and certain improvements owned by Debtor. The land (separately) is valued by the appraisal district at $119,100.

*** Includes $3,403,163 replacement cost for buildings and $326,000 for land per 2019 appraisal

**** Based on Chapter 7 trustee's sliding commission scale and estimated attorneys fees of $35,000.

***** Estimated through January 2022.

In 1998, the Industrial Facility was sold in a bankruptcy sale for approximately $900,000.

# EXHIBIT D TO DISCLOSURE STATEMENT
## FORM BALLOT

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 21-80092 (JPN) |
| TEX-GAS HOLDINGS, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

### BALLOT FOR ACCEPTING or REJECTING PLAN

On September 29, 2021, the Debtor filed its Chapter 11 Plan, as amended on February 25, 2022 (the "Plan") The Court entered an Order conditionally approving the Disclosure Statement on October 6, 2021, [Docket #45], (the "Disclosure Statement") with respect to the Plan. The Disclosure Statement, as amended on February 25, 2022, provides information to assist you in deciding how to vote your ballot.  If you do not have a Disclosure Statement, you may obtain a copy from T. Josh Judd, Andrews Myers, P.C., 1885 Saint James Place, Suite 1500, Houston, Texas 77056, whose telephone number is (713) 850-4200 and whose email is jjudd@andrewsmyers.com. The Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Court.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning treatment under the Plan.  If your ballot is not received by T. Josh Judd, Andrews Myers, P.C., Suite 1500, Houston, Texas 77056 (via US Mail or email jjudd@andrewsmyers.com) on or before February 28, 2022, your vote will not count as either an acceptance or rejection of the Plan.  If the Plan is confirmed by the Bankruptcy Court it will be binding on you whether or not you vote.

### ACCEPTANCE OR REJECTION OF PLAN

Class 1- <u>Allowed Secured Claim of Ad Valorem Taxing Authorities</u> are unimpaired and deemed to accept the Plan.

28

**Class 2** - The undersigned, a **secured creditor [Class 2- <u>Allowed Secured Claim of East Breifne</u>]** in the unpaid principal amount of $4,546,999.

[Check One]
☐ accepts the Plan          ☐ rejects the Plan.

**Class 3- <u>Allowed Claims Unsecured Claims are unimpaired and deemed to accept the Plan.</u>**

**Class 4** -- The undersigned, **an equity interest holder [Class 4- <u>Allowed Interests of Equity Holders</u>]**.

[Check One]
☐ accepts the Plan.          ☐ rejects the Plan.

DATED: _____, 2022

Company Name:_____

Signature:_____
(Title, if any)

Print or type Name:_____

Address:_____

_____

**TO HAVE YOUR VOTE UNDER THE PLAN OF REORGANIZATION COUNT, YOU MUST FILL OUT AND MAIL, FAX OR EMAIL A COPY OF THE BALLOT TO COUNSEL FOR THE DEBTOR, T. JOSH JUDD c/o ANDREWS MYERS, P.C., 1885 SAINT JAMES PLACE, SUITE 1500, HOUSTON, TEXAS 77056, OR EMAIL jjudd@andrewsmyers.com.  IF YOUR BALLOT IS NOT RECEIVED BY DEBTOR'S COUNSEL ON OR BEFORE FEBRUARY 28, 2022, YOUR BALLOT WILL NOT BE COUNTED AS A VOTE UNDER THE PLAN.**